[No. 6,823—Department Two.]

## SAMUEL B. CHIDESTER *v.* THE CONSOLIDATED DITCH COMPANY.

| | |
|---|---|
| 59 | 197 |
| 121 | 229 |
| 59 | 197 |
| 130 | 141 |
| 59 | 197 |
| 132 | 663 |

NEGLIGENCE—QUESTION OF FACT—PROVINCE OF JURY—SUFFICIENCY OF EVIDENCE.—As negligence, in many cases, is a deduction from facts where there is no conflict, such deduction must be made by the triers of the facts, whether jury or Court, and must be based upon their experience and observation; and in a case where reasonable men might, upon deliberation, differ in their conclusions, it would be improper for this Court to interfere with the verdict.

ID.—ACT OF GOD—INEVITABLE ACCIDENT.—No one is responsible for that which is the act of God, or inevitable accident. But when human agency is combined with it, and neglect occurs in the employment of such agency, liability for damage results.

ID.—ID.—ID.—DEFINITION.—The act of God signifies, in legal phraseology, any inevitable accident occurring without the intervention of man.

ID.—ID.—ID.—If the accumulation of sand in the defendant's ditch was such as to render it probable that the periodical overflow would, by its action, wash out the sand, and thus damage the land of the plaintiff, it was then the duty of the defendant to use all the means which an ordinarily prudent man could employ, under the circumstances, to prevent it.

ID.—ID.—ID.—INSTRUCTIONS.—In the light of the rules above stated, the Court committed no error in giving to the jury the instructions asked by the plaintiff, and stated below.

ID.—ID.—ID.—ID.—CONSTRUCTION.—The Court, at the request of the plaint-
iff, gave the instruction: "Negligence is not simply in originating the
mischief, for this may be a lawful act, but in not controlling it when put
in operation."
    *Held:* By this language the court directed the jury that negligence is not
simply in originating that which might be the *cause* of mischief or injury,
but that it consists also in failing to control this cause so as to prevent
it from inflicting injury.

ID.—ID.—ID.—ADMISSIBILITY OF EVIDENCE—REPORTER'S TRANSCRIPT.—The
reporter's transcript of the testimony of witnesses, given on a former trial
of the case, was admitted in evidence, after proof that the witnesses were
out of the jurisdiction.  *Held:* There was no error.

ID.—ID.—ID.—ID.—IMMATERIAL ERROR.—Certain questions asked by the
counsel for the defendant were ruled out, but were afterwards substan-
tially answered by the witnesses.  *Held:* The defendant was not injured.

APPEAL from a judgment for the plaintiff in the Thirteenth
District Court, Tulare County.  CAMPBELL, J.

The following are instructions four, five, and eight, referred
to in the opinion :

"4. If the defendant's ditch, in its course, runs across the
natural channel of Yokohl Creek in such a manner that the
waters of said creek, in their course, necessarily enter the
ditch, and if, during heavy rains or freshets, this ditch was
not of sufficient capacity to contain all the natural waters of
said creek, together with such additions thereto as came down
the ditch from above said creek, it was defendant's duty to
see that no more water entered the ditch than it would safely
carry through plaintiff's land without detriment or injury to
plaintiff's land; and for any direct injury to the lands of
plaintiff, caused by the overflow of the waters entering this
ditch, resulting directly from the negligence of defendant in
keeping the same in good repair, or in the manner of its use
while under defendant's exclusive control, defendant is re-
sponsible for such damage as he has sustained by reason
thereof.

"5. The defendant was not liable for damages done plaint-
iff's ranch by the natural waters of Yokohl Creek, provided
the damage was not in any way caused by defendant's ditch,
or its waters; but if the jury believe from the evidence, that
defendant's ditch was not in good condition, if it was filled
with sand, and if, in high water, the defendant permitted the
waters of said creek to throw out and carry this sand from

defendant's ditch on to plaintiff's land, then the defendant is liable for the damages caused thereby.

" 8. If the jury believe from the evidence, that the natural tendency of the waters of the Kaweah was down the St. John's River, and away from plaintiff's land, and that between May 6th, 1874, and November, 1876, defendant caused dams to be placed in the stream, so as to cause the waters to flow into the Kaweah, and down its ditch, and that these acts caused more water to flow down the Kaweah and into said ditch than said ditch could carry, and the injury complained of was caused thereby, defendant was responsible for such acts."

It appeared from the evidence, that a subpœna had been issued for the attendance of the witnesses Adams and Gilliam, and the Sheriff made return that he had made diligent search and could not find them in Tulare County, and a witness testified that he had made inquiry, and had not seen them for a year, and had heard that they were out of the State. The witness only knew by hearsay that they were out of the State.

*Brown & Daggett,* for Appellant.

The Court erred in admitting in evidence the depositions of J. T. Gilliam and Arthur Adams. (*Meyer* v. *Roth,* 51 Cal. 582; *Butcher* v. *V. V. & C. L. R. R.,* 56 id. 598.) The Court erred in giving to the jury plaintiff's fifth instruction. The deposit of sand in the ditch would be one of the inevitable results of a lawful use of the ditch, and so long as this sand was not carried from the ditch on to plaintiff's land by the act of the defendant, the law will not hold defendant liable. (*Robinson* v. *Black Diamond Coal Co.,* 50 Cal. 460 ; Sher. & Redf. on Neg., § 581.) But the chief vice in the instruction in question is, that it assumes that it was negligence *per se* for defendant to permit sand to be in the ditch. This is not law. (*Perry* v. *S. P. R. R. Co.,* 50 Cal. 578 ; *Flynn* v. *S. F. & S. J. R. R.,* 40 id. 19.) The instruction wholly ignores the maxim *causa proxima non remota spectatur.* (Sher. & Redf. on Neg., §§ 9, 595 ; 2 Greenleaf on Ev., § 256 ; Civ. Code, § 3333; Sedgwick on Damages, 5th ed., pp. 56, 122; *Chidester* v. *Consolidated People's Ditch Co.,* 53 Cal. 56.) The Court erred in giving to the jury plaintiff's sixth instruction. This instruction assumes that

defendant originated the mischief. It is the duty of the Court to present to non-professional minds, in clear and succinct language, the legal propositions directly bearing upon the facts to be submitted to the jury. (*Bullard* v. *His Creditors*, 56 Cal. 600; Proffatt on Jury Trial, § 316.)

*W. W. Cross* and *Atwell & Bradley*, for Respondent.

Defendants, having constructed a ditch across the channel of Yokohl in such a manner as that the waters of said creek must necessarily enter the ditch, were bound to turn no more water in the ditch than it would carry, together with the waters of Yokohl. (*Turner* v. *Tuolumne Water Co.*, 25 Cal. 398.) It clearly appears, without conflict, that the ditch was filled with sand at the plaintiff's place; that more water was turned and suffered to flow in it than it could carry; that it thereby constantly broke its banks, washed gullies through, and carried sand on the plaintiff's land, and that defendant made no effort to remedy these evils. (*Proprietors of Locks and Canals* v. *Nashua R. R. Co.*, 10 Cush. 385; *Perry* v. *Worcester*, 6 Gray, 544.)

The COURT:

We are satisfied with the reasons given in the opinion of Department Two, filed in this cause December 24th, 1880. Therefore the judgment is affirmed.

The following is the opinion of Department Two, referred to in the foregoing opinion:

THORNTON, J.:

This action was brought to recover damages caused by the neglect of the defendant to keep a ditch owned by it in proper repair, so that the waters thereof overflowed its banks, flowed over plaintiff's lands, cutting channels and sloughs through the same, and depositing therein large quantities of crude sand, destroying plaintiff's crops and grasses, and washing away his fences.

The complaint contains three counts. They are substantially the same except as to the periods of the alleged negligence. In the first count, the averments set forth a neglect

as above stated from the 24th of November, 1873, to the
15th of July, 1874, in the second from about the 24th of
November, 1874, to about the 15th of July, 1875, and in the
third from about the 15th of November, 1875, to about the
15th of July, 1876.  The allegations of the complaint above
referred to were denied by the answer.  The cause was tried
before a jury, who rendered a verdict for the plaintiff in the
sum of three hundred and forty dollars.  Judgment was
entered on the verdict.  From this judgment defendant ap-
pealed, assigning sundry errors in the rulings of the Court in
admitting or excluding testimony, in giving and refusing in-
structions, and further claiming that the evidence is insuffi-
cient to justify the verdict.  These errors are all specified in
a bill of exceptions embodied in the transcript.

The evidence was such that it was proper to submit the
case in some of its aspects to the jury.  If there was a sub-
stantial conflict on these aspects of the cause, the judgment
should not be reversed for insufficiency of the evidence to
justify the verdict.  The phase which the cause assumed,
rendering its submission proper, is that regarding the alleged
negligence of the defendant; and as negligence in many cases
is a deduction from facts where there is no conflict, such de-
duction must be made by the triers of the facts, whether jury
or Court, and when such a case presents itself—and this is such
an one—it would be an usurpation of power in this Court to
set aside the verdict of the jury, and reverse the judgment
on the ground of the insufficiency of the evidence to justify
the verdict, where the tribunal whose duty it is under the
law to determine the result of a fair deduction from the evi-
dence, has found that such result demonstrates negligence.
The verdict would doubtless be set aside, where it may be
concluded that in the judgment of reasonable men no such
deduction could be drawn as that apparent from the verdict,
but in no other case should this be done.  In a case where
reasonable men might, upon deliberation, differ in their con-
clusions, it would be improper for this Court to interfere with
the verdict on the ground on which it is asked to do so in
this case.  Such a deduction from facts previously determined,
must be based upon the experience and observation of the
triers, and the experience and observation of this Court ought,

not to be substituted for that of the jury. (See *Fernandez* v. *Sacramento C. R. R. Co.*, 52 Cal. 45; *Shafter* v. *Evans*, 53 id. 32; *N. E. Glass Co.* v. *Lowell*, 7 Cush. 321.)

The action is based on the alleged negligence of defendant. Such negligence, to be actionable, must rest on a breach of an obligation or duty imposed on the party complained of. The obligation or duty is devolved by law on all men to use their unimpeached legal rights so as not to injure others. It is beyond the power of the judiciary, or any other tribunal or officer known to our laws, to compel the special performance of this duty, but courts may indirectly compel it by condemning in damages the erring party, and redress the injury done in the particular case by a judgment for damages in money, which can be enforced against the property of the delinquent.

In the exercise of the powers committed to them, courts must investigate and define the limits of the duty disregarded or broken, and the extent of its infraction. Such is the limitation of the main inquiry in each case submitted for determination. The general canon of the law is simple enough; the matter of difficulty is encountered in the application of the rule—in defining and limiting the duty or obligation, and in marking the extent of its infringement.

No one is responsible for that which is merely the act of God, or inevitable accident. But when human agency is combined with it, and neglect occurs in the employment of such agency, a liability for damage results from such neglect. Such is the rule laid down and applied in *Polack* v. *Pioche*, 35 Cal. 416. "The expression" (the expression referred to is that comprised in the words, "act of God") "excludes the idea of human agency, and if it appears that a given loss has happened in any way through the intervention of man, it can not be held to have been the act of God, but must be regarded as the act of man." (*Black* v. *Pioche*, 35 Cal. 423, *per* Sanderson, J., delivering the opinion of the Court. See cases cited in the opinion; Wharton on Negligence, §§ 553, 559, and cases cited; Broom's Legal Maxims, "*Actus dei nemine facit injuriam*," *pages 227, 228.) The learned author just referred to states the rule thus: "The act of God signifies, in legal phraseology, any inevitable accident occurring without the interven-

tion of man, and may, indeed, be considered to mean something in opposition to the act of man, as storms, tempests, and lightning. The above maxim may, therefore, be paraphrased and explained as follows: It would be unreasonable that those things which are inevitable by the act of God, which no industry can avoid, nor policy prevent, should be construed to the prejudice of any person in whom there has been no laches." (Broom's Legal Maxims, *pages 227, 228.)

In the case under consideration it is contended on behalf of defendant that the damage sued for was caused by the act of God. If this were so, no case was made out which should have gone to the jury. To this it was replied that the agency of the defendant concurred in causing the injury complained of in which defendant was negligent, and therefore it was responsible.

The evidence which was submitted to the jury tended to show this state of facts: That from a period commencing with the 6th day of May, 1874, and ending on the 15th day of July, 1876, the defendant was the owner of a ditch or canal for conveying water, known as the People's Ditch through which ditch defendant caused to be carried a large quantity of water; that the ditch commences at a slough known as "*Lander's Slough;*" that it runs from the point of beginning in a south-westerly direction, along an alkali ridge until it reaches a swag or depression in the surface of the land, above the tract owned by the plaintiff; this swag is from a quarter to half a mile wide; that the land of plaintiff alleged to be injured is in this depression. Lander's Slough issues from a swamp, and connects with the Kaweah river by a number of small channels. The country between Lander's Slough, where the ditch heads, and the Kaweah, is low, with a number of small channels running through it. The Kaweah River is on the north-westerly side of the ditch, and is really connected with it by the channels through the swamp above mentioned, coming into Lander's Slough, from which the ditch runs. It (the Kaweah) runs south-westerly, and is separated from the depression in which the ditch is situated by a ridge. This ridge is on an average three and a half feet higher than the depression. The ditch crosses a creek called Yokohl Creek above plaintiff's land, and about two miles from

it. This creek spreads out about the point where it is crossed
by the ditch. Above this, it has well-defined banks; below,
it is a low water-way extending down into plaintiff's land.
Across the north-west corner of plaintiff's land runs Deep
Creek, about a mile west of the ditch. *Outside* Creek runs
through plaintiff's land, and is connected by a channel with
Deep Creek, and also with the water-way of the Yokohl.
This creek (Outside) is north-west of the ditch, and not very
far distant from it. These two creeks carry sand, and there
was an accumulation of sand in the ditch.

The injury complained of occurred in a season of high
water caused by the melting of the snow on the mountains
above. The overflow so caused is periodical, and may be, and
is anticipated by all persons inhabiting the region where the
alleged damage occurred. The obligation rested on defend-
ant to keep the banks of its canal in repair. It was
bound to use ordinary diligence for this purpose. The dili-
gence required, however, must be commensurate with the
duty, and the duty is that ordinarily employed by a prudent
business man when dealing with his own affairs under the cir-
cumstances which surround him, and call his mind and energy
into action.

If the accumulation of sand in the defendant's ditch was
such, as to render it probable that the periodical overflow
would by its action wash out the sand and thus damage the
land of plaintiff, it was then the duty of the defendant to use
all the means which an ordinarily prudent business man
would employ under the circumstances to prevent it. The
sand might have been removed from the ditch and deposited
where the water would not reach it during the period of over-
flow referred to above. Ordinary prudence would have dic-
tated such a course to prevent injury to the property of
another. As before stated, the obligation rested upon the de-
fendant to exercise the diligence in the use and management
of its ditch which a prudent man would ordinarily employ
under the circumstances where his own interests were to be
affected.

In the light of the rules above stated, the Court committed
no error in giving to the jury the instructions asked by plaint-
iff, and numbered four, five, and eight.

The Court, at the request of the plaintiff, gave the further instruction: "Negligence is not simply in originating the mischief, for this may be a lawful act, but in not controlling it when put in operation." By this language we understand the Court to have directed the jury that negligence is not simply in originating that which may be the *cause* of mischief or injury, but that it consists also in failing to control this cause, so as to prevent it from inflicting injury. This, in our judgment, is the fair construction of the instruction, and in this view we can not see that the defendant was prejudiced by its having been given. Whoever originated that which caused the injury, it became the duty of the defendant, from and after the time at which it acquired the ditch, to use the proper means to prevent this cause from producing injury to another. The instruction was correct.

The defendant made several requests to instruct, some of which were given, and several refused. The refusal of the Court to instruct as asked was excepted to by defendant. We have examined the instructions and find nothing in them which would justify a reversal of the ruling of the Court. There was no error in admitting the depositions of Arthur Adams and J. T. Gilliam.

In the course of the trial counsel for defendant asked of a witness (Wood) the following question: "Well, don't you know if there had been no ditch there all those times that plaintiff's land was flooded, that the waters would have overflowed from the end of Lander's Slough down that depression?" Counsel for defendant also asked of a witness under examination (Powell) the following question: "I will ask you to state whether or not it is a fact that if defendant's ditch was not there in that locality, the waters would flow out of the Kaweah in high-water times, and go down and flow through that swag across plaintiff's land?" To these questions the plaintiff's counsel objected on the ground that they were irrelevant and immaterial. The Court sustained the objections and defendant excepted.

Admitting that the Court erred in sustaining the objections to these questions, the questions were subsequently substantially answered by the witnesses, respectively, and their testimony relating to the subject-matter of the questions was

before the jury; therefore, the defendant was not injured by the ruling.

We find no substantial error in the record. The judgment is affirmed.

SHARPSTEIN, J., and MYRICK, J., concurred.