[Civ. No. 1124.    Third Appellate District.—November 22, 1913.]

## J. NAHL, Appellant, v. ALTA IRRIGATION DISTRICT et al., Respondents.

WATERS AND WATERCOURSES—IRRIGATION DITCH—DUTY OF OWNER TO PREVENT INJURY TO OTHERS.—The owner of an irrigation ditch must so construct and maintain it as that, in its operation, by the exercise of reasonable or ordinary care, no damage will result to others. To him applies the principle that one must so use his own property as not to injure that of others.

ID.—DEGREE OF CARE EXACTED FROM OWNER OF DITCH.—Such owner, however, is not an insurer against all damages arising from his ditches, but is liable when negligent in the construction, maintenance, and operation thereof. He is, in other words, required to exercise only reasonable or ordinary care in the construction, maintenance, and operation of his ditches.

ID.—ACT OF GOD—LIABILITY OF OWNER OF DITCH OR CANAL.—A ditch or canal owner is not responsible for that which is solely the result of an act of God, or inevitable accident; it is only when human agency is combined with the act of God, and neglect occurs in the employment of such agency, that a liability for damage results from such neglect.

ID.—OVERFLOW DUE TO EXTRAORDINARY FLOODS—LIABILITY OF OWNER OF DITCH.—In this action against an irrigation company for damages occasioned by an overflow of one of its ditches, flooding the plaintiff's land and destroying eucalyptus trees thereon, the evidence is sufficient to justify the findings of the court that the overflow and consequent damages were not due to any fault or negligence of the defendant, but to extraordinary rainfall and unprecedented storms.

ID.—CONFLICTING EVIDENCE—REVIEW ON APPEAL.—Where upon some of the main points the evidence is conflicting, and nothing appears upon the face of the testimony from which the findings must have been reached indicating the improbability of its verity, an appellate court, upon a review of the case, must abide by the decision of the trial court upon the ultimate result arrived at by it from such testimony.

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Austin Lewis, and R. M. Royce, for Appellant.

Power & McFadzean, and Joe D. Greene, for Respondents.

HART, J.—In the month of March, 1911, the plaintiff's land, embracing forty acres and situated in near proximity to one of the water ditches of the defendant corporation, in Tulare County, this state, was inundated by water, and a large number of eucalyptus trees which he had planted and was cultivating on said land was thereby destroyed. In his complaint, the plaintiff charges that the damage to his land and trees was caused by the inundation of said land from water running in and through the corporation's ditch, and that said overflowing of said water was entirely and directly due to the inexcusable negligence of the defendant corporation and the members of its board of directors, named above as the other defendants herein. The complaint alleges that the damage

thus sustained by the plaintiff amounted in the aggregate to the sum of $4,753.60, for which judgment is prayed.

The answer specifically denies the averments of the complaint, and alleges, by way of a special defense, that the ditch from which the water overflowing the plaintiff's land is alleged in the complaint to have come has been at all times, prior to the date of said overflow and damage, maintained in perfect condition, and that, if the land of the plaintiff was inundated as described in the complaint, it was "the result of superhuman causes, viz: extraordinary and unprecedented floods, which human foresight could not guard against or control, caused by extraordinary rainfall and unprecedented storms in the northern part of the county of Tulare, where plaintiff's land is situate, and the southern part of the county of Fresno, and particularly in the Sierra Nevada Mountains, north and east of plaintiff's land, in the latter part of February and the early part of March, in the year 1911, which rains, storms, and resulting floods swept over and inundated a great part of the territory above described, including plaintiff's said land," etc.

The case was tried by the court without a jury, and the findings of fact are in accord with the special defense set up by the defendants. The court found that the land of the plaintiff was overflowed and, as result thereof, the eucalyptus trees growing thereon were destroyed, in the month of March, 1911, but further found that the said overflow and the destruction of said trees thereby directly resulted from "the flood waters of a certain torrential stream known as Sand Creek, which rises in the Sierra Nevada Mountains in said county, and naturally flows through and across the defendant district and naturally spreads over said land of the plaintiff as well as other lands in the vicinity of the plaintiff's land in times of extraordinary flood; . . .; that plaintiff's said land was not overflowed and the trees thereon were not injured, damaged or destroyed by reason of any carelessness or negligence on the part of said defendants, or any of them, nor by reason of the overflowing or bursting of the ditch described in the complaint, but, on the contrary, the flooding of plaintiff's land and the destruction of his said trees, as aforesaid, was the result of inevitable accident which human foresight could not guard against or control," etc., here substantially following

the allegations of the answer; "that the ditch of defendants referred to in said complaint was properly and carefully constructed in the year 1891, or the year 1892, and was in good repair and suitable for irrigation purposes at the time said flood occurred, and did not at all contribute to or bring about the flooding of plaintiff's said land or the destruction of his said trees, or any thereof; and that plaintiff was not, and has not been, damaged or injured by any act or omission of said defendants, or by reason of the construction or existence of said ditch, or by reason of the manner in which the same was kept or maintained by said defendants or otherwise in any of the sums or amounts specified in his complaint, or in any sum or amount whatsoever," etc.

In accordance with the foregoing findings, judgment was rendered and entered in favor of the defendants and against the plaintiff.

This appeal is prosecuted by the plaintiff from said judgment, the record having been made up in accordance with the new or alternative method of taking appeals.

The plaintiff, in his briefs, declares that there are two questions presented by this appeal, to wit: "One of fact—how did the flooding of plaintiff's land occur? and one of law—is the Alta Irrigation District liable?" But there is in reality but one question in the case, viz.: Does the evidence support the findings? There can, of course, be no question as to the duty and obligations resting upon the owner of an irrigating ditch in his relations as such with the public. He must so construct and maintain it as that, in its operation, by the exercise of reasonable or ordinary care, no damage will result to others. To him, as well as to all persons, must obviously be applied the principle that one must so use his own property as not to injure that of others, or, as that trite doctrine is otherwise more tersely and classically expressed, *Sic utere tuo ut alienum non laedas.* "He is bound to keep his ditch in good repair, so that the water will not overflow or break through its banks and destroy or damage the lands of other parties, and if, through any fault or neglect of his in not properly managing and keeping it in repair, the water does overflow or break through the banks of the creek" and injures or destroys the land or property of others, the law will hold him responsible therefor. (*Richardson* v. *Kier,* 34 Cal. 63, 74, [91 Am. Dec. 681].) But he is not

an insurer against all damages arising from his ditches, but is liable when negligent in the construction, maintenance, and operation thereof.    He is, in other words, required to exercise reasonable or ordinary care only in the construction, maintenance, and operation of his ditches.    (3 Current Law, p. 1125, notes 106 and 110; *King* v. *Miles City Irr. Co.,* 16 Mont. 463, [50 Am. St. Rep. 506, 41 Pac. 431]; *Chidester* v. *Consolidated Ditch Co.,* 59 Cal. 197; *Grand Val. Irr. Co.,* v. *Pitzer,* 14 Colo. App. 123, [59 Pac. 420]; Weil on Water-rights in the Western States, 2d ed., pp. 256, 257.)    Nor is a ditch or canal owner responsible for that which is solely the result of the act of God, or inevitable accident.    It is only when human agency is combined with the act of God and neglect occurs in the employment of such agency, that a liability for damage results from such neglect.    (*Polack* v. *Pioche,* 35 Cal. 416, [95 Am. Dec. 115]; *Chidester* v. *Consolidated Ditch Co.,* 59 Cal. 197, 202; *Proctor* v. *Jennings,* 6 Nev. 83, 88, 90, [3 Am. Rep. 240]; *Jordan* v. *Mount Pleasant,* 15 Utah, 449, [49 Pac. 746]; *Lisonbee* v. *Monroe Irr. Co.,* 18 Utah, 343, [72 Am. St. Rep. 784, 786, [54 Pac. 1009]; *Mathews* v. *Kinsell,* 41 Cal. 512; monographic note to *McCoy* v. *Danley,* 57 Am. Dec. 690, 691; *McKee* v. *Delaware etc. Canal Co.,* 125 N. Y. 353, [21 Am. St. Rep. 740, and note, 26 N. E. 305].)

Thus we have stated some of the general principles which apply to the owners of irrigation companies and by the light of which the court below no doubt considered and reached its conclusion upon the evidence.

Now, the single question submitted for determination by this court is, as before stated, whether the evidence supports the findings, and to this question we conceive it to be clear, after an examination of the record, that an affirmative answer must be returned, and the judgment cannot, therefore, justly be disturbed.

It is deemed unnecessary to present herein a detailed statement of the testimony, of which a large amount was heard by the court.    It will be sufficient, for the purposes of this decision, merely to state, in a general way, the evidence produced before the court.

Upon some of the main points the evidence is conflicting, but no proposition is more familiar to the profession than that where such a condition exists as to the evidence, and nothing

appears upon the face of the testimony from which the findings must have been reached indicating the improbability of its verity, an appellate court, upon a review of the case, must abide by the decision of the trial court upon the ultimate result arrived at by it from such testimony.

The situation, as disclosed by the record, appears to be this: The defendant corporation is the owner of and maintains an irrigation system of considerable magnitude in Tulare County. This system consists of a number of main canals or ditches, one of which, as seen, runs in close proximity to the plaintiff's land which it is claimed was inundated by the water from said ditch. The source of the water supply for said irrigation system is King's River.

The plaintiff testified that the water which overflowed his land broke over and through the banks of the ditch at a point where a bridge, comprising a part of a road, crosses said ditch a short distance west of said land. He further testified, as did some other witnesses testifying in his behalf, that the ditch at the point where the water broke through and over its banks was very shallow; that there was a ridge or "hump," as he termed it, at the bottom of the ditch at that point which was due to the fact that the soil thereat was of a hard-pan nature, difficult to dig into and that the defendant, by reason thereof, failed to make it of sufficient depth to be capable of carrying the amount of water required for its use for irrigation purposes. He further declared, as did some of his other witnesses, that a large quantity of old tin cans and other débris or refuse matter had been dumped into the ditch near the bridge, thereby filling up the channel so that it obstructed the free flow of the water, and caused the banks to give way under the extraordinary pressure of the flood waters which passed through the ditch at the time of the overflow of his land. All this testimony, however, was directly contradicted by Mr. Rice, superintendent of the defendant corporation, and other witnesses produced by the defendants. They said that, at the point at which the water is alleged to have flowed from the ditch over the plaintiff's land, the channel of the ditch was of sufficient depth to safely hold and carry the usual amount of water turned into the ditch from King's River for the purpose of irrigating, when necessary, all the lands in the district and situated within that part of the district in which the plaintiff's

land is located; that no obstruction to the free and ordinary flow of the water in the ditch existed at the point near the bridge, as described by the plaintiff and his witnesses; that there were no old tin cans or other rubbish in the channel of the ditch, as stated by the plaintiff and other witnesses testifying for him. Rice further testified that the company, prior to the time of the inundation of the plaintiff's land, had turned no water from King's River into the particular ditch from which the water flowed over and upon the land of the plaintiff, and in this statement he was corroborated by other witnesses. It was further shown, as the court found, that, commencing in the latter part of February, 1911, and continuing up to the early days of March of that year, and previously to the flooding of the plaintiff's land, heavy and almost unprecedented rainstorms prevailed in the northern part of Tulare County, with the result that a number of creeks, having their source in the Sierra Nevada Mountains and whose courses are southward, generally speaking, and through portions of the district of the defendant corporation, were surcharged with water. One of these ravines or creeks is known as Sand Creek. This creek passes over the ditch to which the complaint attributes the direct source of the inundation of the plaintiff's land at a point not far distant from said land, and when, as in the months of February and March of the year 1911, its channel is filled with water because of an unusual precipitation of rain, the water therein, after passing the ditch, spreads out and over the lands situated in the vicinity of that of the plaintiff. And, according to certain testimony produced by the defendants—testimony sufficient to support the findings in that regard—the overflow of the plaintiff's land, as well as a large area of other lands contiguous thereto, was occasioned entirely by the extraordinary quantity of water received into the channel of Sand Creek by reason of the heavy rainstorms which prevailed in the latter part of February and the early part of March, 1911, throughout the watersheds from which said creek obtains its water, and that said overflow would have occurred even if the ditch had not existed.

There is evidence in the record that the ditch referred to in the complaint had been constructed some twenty years prior to the time of the flood in question here, and that during all of said period of time it had been in good condition and always

sufficient in every respect to meet the requirements of the district and the water users. It was shown that, up to the time of the flood and immediately thereafter, the ditch was capable of carrying all the water required for irrigation purposes in the neighborhood of the plaintiff's land, and that it did do so after the flood.

But it is conceived that a further review of the evidence is unnecessary. As stated in the beginning, there is an abundance of evidence upon which the court was justified in predicating its findings that the flooding of the plaintiff's land and the consequent destruction of his eucalyptus trees were not due to any fault or negligence of the defendants, but were occasioned solely by a superhuman cause or one beyond the control of human agency.

The judgment is, accordingly, affirmed.

Chipman, P. J., and Burnett, J., concurred.