RAISH, RESPONDENT, *v.* ORCHARD CANAL CO., APPELLANT.

(No. 5,134.)

(Submitted April 6, 1923. Decided April 26, 1923.)

[218 Pac. 655.]

*Waters and Watercourses—Flooding of Lands—Negligence— Defenses — Act of God—Corporations—Evidence—Declarations and Admissions of Officers—When Binding on Corporation.*

Corporations—Declarations of Officers—When Binding on Corporation.
 1. Declarations of an officer or agent of a corporation bind the principal only when made by him while acting within the scope of his authority, and then only, as part of the *res gestae,* if made at the very time the transaction to which they related took place.

Same—Declarations and Admissions of Directors—When Binding on Corporation.
 2. The directors of a corporation act for it only as a body, and therefore admissions or declarations of an individual director are not binding upon it unless authority to make them was duly conferred.

Same—Declarations of President—When Binding on Corporation.
 3. Declarations of the president of a corporation, as contradistinguished from those of a director, if made in the active discharge of his official duties and at the time of the occurrence to which they relate, are binding upon the corporation and admissible in evidence.

---

 1. Competency of admissions and declarations of officer as evidence against corporation, see note in **Ann. Cas.** 1912C, 109.

[67 Mont. 140.]

Waters and Watercourses—Flooding of Lands—Negligence—Act of God
—When Defendant Liable for Damages.
    4. *Held,* in an action for damages for the flooding of lands oc-
casioned by the breaking of an embankment, that where two
causes combine proximately to produce an injury, the one being the
culpable negligence of the defendant and the other an act of God
(an unprecedented flood) for which neither party is responsible, the
defendant is liable for such loss as was caused by his own act con-
curring with the act of God, provided the loss would not have been
sustained but for such negligence.

*Appeal from District Court, Carbon County; Robert C.
Stong, Judge.*

ACTION by George W. Raish against the Orchard Canal
Company, a corporation. From the judgment for plaintiff, de-
fendant appeals. Reversed and remanded.

*Mr. E. B. Merrill* and *Messrs. Johnston, Coleman & John-
ston,* for Appellant, submitted a brief; *Mr. W. M. Johnston*
argued the cause orally.

*Messrs. Nichols & Wilson,* for Respondent, submitted a brief;
*Mr. Edmond Nichols* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

The Orchard Canal Company, a domestic corporation, owns,
operates and controls a distributing system by which the
waters of Clark Fork River are conducted to the lands of the
company's stockholders for irrigation purposes. The head-
gate of the main canal is situated on land belonging to George
W. Raish and was constructed in an abandoned channel of
the river. It has three openings, each four feet wide and four
feet high, with exterior and partition walls of masonry extend-
ing down the channel about fourteen feet. On top of these
walls were heavy boards and on these boards, dirt to the depth
of four feet had been placed and the covering as thus con-
stituted was used as a roadway or bridge. To the face of
each wall was attached an upright piece of lumber eight feet
high and upon the top of these was a cap. On the face above

the openings were pieces of lumber nailed to the uprights transversely, and a gate was provided for each opening. Extending from each side of the headgate was a wing wall built into the natural embankment. Each wing wall was of masonry about one foot thick and the height of the cap of the headgate. Behind each wing wall was a fill of dirt extending to the level of the top of the wall. From the headgate the canal extended through Raish's land for a considerable distance.

About June 12, 1918, the water in Clark Fork River reached an unprecedented high stage. The dirt covering of the headgate, the transverse boards on the face and most of the boards over the headgate walls were washed away and finally the west wing wall was destroyed, with the result that a quantity of water was admitted beyond the capacity of the canal and the excess spread over Raish's land, causing damage to the land itself, to the buildings, fences and growing crops. In order to minimize the damage, the company caused runways to be excavated across Raish's land from the canal to the river to lead the water back into its natural course.

This action was brought by Raish to recover compensation for the damages he suffered. He charged negligence on the part of the company in permitting the headgate to be and remain out of repair, in that the lumber had become decayed, weak and insufficient to withstand the pressure of high water; also in failing to support properly the wing walls and particularly the west wall. There are other grounds of negligence set forth, but they are not involved here.

The answer denied any negligence and pleaded affirmatively that the destruction of the headgate and wing wall and the consequent injury to plaintiff's property were occasioned solely by an unprecedented flood, or, in other words, by an act of God. The trial of the cause resulted in a verdict for plaintiff. A new trial was denied and defendant appealed from the judgment.

1. It is contended that the evidence fails to prove the negligence charged in so far as it relates to the maintenance of the

headgate proper and the west wing wall. Without repeating the testimony we content ourselves with saying that in our judgment it is sufficient to go to the jury upon the question of defendant's failure to exercise reasonable care to protect the west wing wall after the efficiency of the headgate had become impaired.

2. We are of the opinion, however, that the evidence does [1] not show that the damage, in whole or in part, would have resulted from the destruction of the wing wall alone. Apparently the overflow of the canal was caused by the partial destruction of the headgate combined with the total destruction of the west wing wall; hence it became necessary for plaintiff to show negligence in maintaining the headgate or concede that its destruction resulted from the unprecedented flood. Plaintiff chose to assume the burden of proving negligence, and the principal evidence introduced to sustain the charge consisted of declarations, said to have been made by certain directors of the defendant corporation, tending to prove that the headgate was out of repair a short time before the 12th of June, and other declarations made after that date, tending to prove an acknowledgment of liability for the damages which resulted to plaintiff's property. This evidence was admitted over objection and error is predicated upon the rulings. It is not necessary to set forth all of the testimony. Illustrative examples will suffice.

Charles Coler, a witness for plaintiff, testified that shortly before June 12, Jensen, Swan and Parsons, three of the directors of the defendant corporation, inspected the headgate and on that occasion Jensen remarked: "That there had to be some repairs made before long."

Plaintiff testified that after his property had been flooded, Parsons, Bowman and Jensen, three of the directors, in conversation with him, said: "That as soon as the water went down they would clear the *debris* off the ground and level up the ground in the best possible condition they could with the

amount of dirt they had and after that we would make settlement of the damages.''

It is self-evident that a corporation can speak only through [2] officers or agents, and it is the general rule of evidence that a corporation will be affected by a relevant declaration of its proper officer or agent made in the active discharge of his duties (22 C. J. 387); but the declaration will bind the corporation only when made by the officer or agent acting within the scope of his authority and with reference to transactions then depending *et dum fervet opus.* It is then only because the declaration is a verbal act and part of the *res gestae* that it is admissible at all (*Callahan* v. *Chicago, B. & Q. R. Co.,* 47 Mont. 401, 47 L. R. A. (n. s.) 587, 133 Pac. 687; 1 Greenleaf on Evidence, sec. 113; 2 Jones on Evidence, sec. 268).

It is sometimes said loosely that the powers of a corporation are exercised by the directors, but that statement is not true. The corporate powers, business and property of a corporation organized under the laws of this state are exercised, conducted and controlled by *a board* of not less than three nor more than thirteen directors (sec. 5933, Rev. Codes 1921). In other words, the directors act for the corporation only as a board—an organized body (*Williams* v. *Commissioners,* 28 Mont. 360, 72 Pac. 755; *Kirkup* v. *Anaconda Amusement Co.,* 59 Mont. 469, 17 A. L. R. 441, 197 Pac. 1005), and while the official declarations of the body as such are binding upon the corporation, curbstone admissions or declarations of an individual director have no such effect, in the absence of evidence that authority to make such declarations was duly conferred (*Bank* v. *Cooper,* 36 Me. 179; *Manufacturing Co.* v. *McAllister,* 36 Mich. 327; *Bridge Co.* v. *Bachman,* 66 N. Y. 261; *Saldo College* v. *Davis,* 47 Tex. 131; 22 C. J. 389). If this were not true; then one director by his declaration could commit the corporation to a particular course of conduct in defiance of the will of the board, and if one director could bind the corporation to one course of procedure another director could bind it

to a contrary course, with the result that corporate action would be impossible and the purpose of the organization defeated. While it is competent for a corporation to confer upon a single director the authority to bind the entity by his statement, the director is not the agent of the corporation for that purpose merely by virtue of his office as director (2 Thompson on Corporations, sec. 1627).

There is not a suggestion in this record that any director of defendant was authorized to speak for the board; hence the court erred in admitting evidence tending to prove that the declarations set forth above were made, and it cannot be said that the error was harmless, for without these declarations plaintiff did not show negligence in the maintenance of the headgate and, in the absence of a showing of mismanagement of the headgate, plaintiff failed to prove negligence which proximately caused the canal to overflow.

3. Like complaint is made of the ruling of the trial court [3] admitting evidence of a declaration by the president of the defendant corporation, but the rule which excludes the declaration of an individual director is not applicable. The chief executive officer sustains to the corporation a relationship entirely different from that of the director, and where, as in this instance, the declaration, if made, was made by the president while in the active discharge of his official duties and at the time of the occurrence to which it relates, such declaration, if relevant, is admissible under the doctrine announced in *Callahan* v. *Chicago B. & Q. R. Co.*, above.

4. Exception is taken to Instruction 8, given by the court at [4] the instance of the plaintiff, in which the jury was advised "that where two causes contribute to an injury, one of which is an unprecedented flood, called an act of God, and the other negligence of the defendant, the plaintiff would be entitled to recover, if the negligence complained of was the proximate cause of the injury." The court elaborated somewhat upon the rule stated in applying it to the instant case and also defined the term "proximate cause," and directed the

67 Mont.—10

jury that defendant could not be held liable for damages caused solely by the unprecedented flood. In their brief counsel for defendant say: "It is an unquestioned rule of law that where the damage claimed in an action is occasioned by one of two or more causes, for one of which the defendant is responsible and for the others of which he is not responsible, the plaintiff must fail unless the evidence shows what portion of the damage was produced by the cause for which defendant was responsible." We do not accept this as a technically accurate statement of the rule. It will be conceded, however, that where damages are claimed for injuries which resulted from *one of two* causes, for one of which the defendant is responsible and for the other of which he is not responsible, the plaintiff must fail if his evidence does not show that the damage, in whole or in part, was produced by the former cause (*Honaker* v. *Whitley,* 124 Va. 194, 97 S. E. 808; *Merriam v. Hamilton,* 64 Or. 476, 130 Pac. 406). However, it is equally well settled that whenever two causes combine proximately to produce an injury, the one being a culpable negligent act of the defendant and the other an act of God for which neither party is responsible, the defendant is liable for such loss as is caused by his own act concurring with the act of God, provided the loss would not have been sustained by plaintiff but for such negligence of defendant (*Lundeen* v. *Livingston E. L. Co.,* 17 Mont. 33, 41 Pac. 995; *Meisner* v. *City of Dillon,* 29 Mont. 116, 74 Pac. 130; *Mulrone* v. *Marshall,* 35 Mont. 238, 88 Pac. 797).

Instruction 8, when construed with the other instructions given, is not open to the objections urged against it.

The other specifications do not present any reversible errors and do not call for special consideration.

The judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Galen and Stark concur.

Rehearing denied June 8, 1923.