PIONEER MINERALS CORPORATION ET AL., APPELLANTS, v. LARABIE BROTHERS BANKERS, INC., ET AL., RESPONDENTS.

(No. 7,357.)

(Submitted March 26, 1935.  Decided April 3, 1935.)

[43 Pac. (2d) 884.]

*Mr. W. E. Keeley* and *Mr. W. T. Boone,* for Appellants.

*Mr. T. P. Stewart* and *Mr. Sid G. Stewart,* for Respondents.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiffs, the Pioneer Minerals Corporation and certain of its stockholders, have appealed from a judgment directing the defendant Larabie Brothers Bankers, Incorporated, to pay over to the defendant Charles Gnose, trustee, all moneys in its possession and belonging to the plaintiff corporation, for the benefit of and for distribution to the individual defendants as creditors of the plaintiff corporation.

The Pioneer Minerals Corporation owned and operated certain mining properties in Powell county up to some time in November, 1932, the mining claims and machinery thereon constituting all of the assets of the corporation at the time mentioned. The corporation then entered into a contract of sale of all of its property to the Henderson Mining Company

for the agreed price of $8,750, $4,375 payable on execution of the contract and the balance in six months' time. The purchaser made the initial payment and the seller executed a deed and escrow agreement, which it lodged with the defendant bank, the deed to be delivered to the purchaser on its payment of $4,375 into the bank on June 16, 1933.

On receipt of the down payment the directors of the corporation plaintiff made some investigation as to the indebtedness of the corporation, paid $1,000 on debts, and distributed the balance to the stockholders. Thereafter they advertised for the presentation of claims, and on January 30, 1933, canvassed the claims presented; these claims totaled approximately $6,000. One claimant filed labor liens for nearly $1,900; two started actions on their claims and attached or garnisheed the proceeds of the sale in the hands, or to come into the hands, of the bank, and one of these creditors secured judgment for $780.13 and collected the amount on execution.

Thereafter the directors met on call with certain of the creditors present. Joseph J. McCaffery, an attorney at law and one of the directors, suggested that the only asset of the corporation was the amount to be received on the contract and the debts then acknowledged were far in excess of the assets; that but two courses were open to them, either to go into bankruptcy or reach some sort of settlement with the creditors. McCaffery then asked Charles Gnose, one of the chief creditors and a prominent merchant of Anaconda, if he would not consult the creditors whose claims were before the board, and see if he could get them all to agree to accept the amount the corporation would receive from the bank, pro rata, in full settlement of their accounts. This Gnose agreed to do. He reported back that all of the creditors had agreed to the proposition made, and that he (Gnose) was chosen to act as trustee.

The records of the corporation contain the signed minutes of a meeting of the directors held pursuant to call, showing that a motion was duly made, seconded, and carried, to the effect that "the assets of the company being insufficient to pay the

claims presented against the company, the directors at a meeting assembled, make an assignment of all their interest * * * in that certain escrow agreement * * * whereby the Henderson Mining Company * * * agrees to pay the sum of $4,375.00 on or about the 16th day of June, 1933, to some person agreed upon by the creditors." These minutes were signed by M. J. Dezell, as secretary.

Thereafter an instrument was prepared and executed, reciting that the corporation "being unable to pay its debts in the usual course of business, and desirous of disposing of its property and assets for the benefit of its creditors, * * * does hereby grant, convey, transfer, assign, and set over to Charles Gnose, * * * all its personal property * * * and interest in and to that certain escrow agreement * * * , its said personal property, other than the foregoing escrow agreement, being one truck, the character and description of which is not now known." Gnose is therein directed to collect the amount paid on the escrow agreement, sell the truck, and distribute the proceeds among the creditors. The instrument is signed by "Pioneer Minerals Corporation, by M. J. Dezell, President." "Attest, R. M. Dezell, Secretary, A. J. Dezell, Director. Joseph J. McCaffery, Director." These four signers, with T. J. Collins, constitute the board of directors. Collins, being a creditor, did not sign. Certain creditors accepted the assignment in writing and, in consideration thereof, agreed to accept the proceeds mentioned in full settlement of claims and demands against the corporation. This joint instrument was filed with the bank.

Thereafter M. J. Dezell filed with the bank a notice of revocation of the assignment and commenced action, in the name of the corporation and of himself, his two sons, and other stockholders, to set aside the assignment as invalid, secure judgment against the bank, and to compel each of the creditors to come into court and prove his claim, or suffer default on his claim. Issue was joined by answers, and the cause was tried to the court without a jury. The trial resulted in judgment for the defendants as above indicated.

The plaintiffs make ten assignments of error, but these are followed by a general argument which raises only the questions hereinafter discussed. The chief contention is that the assignment is invalid in that the corporation did not comply with the statutes providing for an assignment for the benefit of creditors, or with the procedure for the sale of corporate property.

There is no question but that, in making the *sale* of its property, the corporation complied with the requirements of section 6004 of the Revised Codes of 1921.

It is equally true that the assignment made does not comply with the statutory provisions regulating a general assignment for the benefit of creditors. (See Chap. 4, Part 6, Rev. Codes 1921, sec. 8612 et seq.) However, the transaction had between the corporation and its named creditors, as evidenced by the instrument before us, is not an assignment for the benefit of creditors, but rather a composition agreement with those creditors consummated by an "assignment" of, or direction to the bank to turn over, certain money which would come into the hands of the bank belonging to the corporation.

The distinction between an assignment for the benefit of creditors and a composition is that the latter requires the assent of the creditors; the former does not. Statutory provision for a voluntary assignment, and fixing the conditions on which it may be made, does not prevent the making of a composition with creditors. (12 C. J. 252, and cases cited.)

The agreement here considered is not unlike that considered in *Wilson* v. *Samuels,* 100 Cal. 514, 35 Pac. 148, 149, 559, wherein a "composition agreement" between debtor and creditors is defined as "an agreement made upon a sufficient consideration between an insolvent or embarrassed debtor and his creditors, or a considerable proportion of them, whereby the latter, for the sake of immediate or sooner payment, agree to accept a dividend less than the whole amount of their claims, to be distributed pro rata in discharge and satisfaction of the whole." The agreement of each constitutes a sufficient con-

sideration for the consent of the others. The chief requisite of such an agreement is that the parties act in good faith and that there is no fraudulent or secret preference. (*Kullman* v. *Greenebaum,* 92 Cal. 403, 28 Pac. 674, 27 Am. St. Rep. 150.) Such an agreement is not affected by the provisions of the above chapter on "Assignments for the Benefit of Creditors" (sec. 8614, Rev. Codes 1921, within that chapter).

Further, the fact that the debtor may have had other creditors in addition to those entering into the agreement does not ▮ affect the validity of the agreement. A debtor, even though insolvent, may prefer one creditor to another, and this may be done either by direct conveyance or by conveyance to a third person for the creditor's benefit. (*Costello* v. *Shields,* ante, p. 335, 43 Pac. (2d) 879.) So also may a debtor make composition with two or more creditors to the exclusion of others. (12 C. J. 251.)

No element of "sale" is involved in this final transaction of ▮▮ the corporation; its only right under the escrow agreement mentioned was to receive from the bank a definite sum of money, which right it assigned to the trustee for the purpose of settling pro rata certain claims against it, which claims the trial court found on competent evidence to have been audited and approved, and thus to have become accounts stated, but which the corporation had not the funds to pay in full. The situation of the corporation in this matter is no different from what it would have been, had it paid over to Gnose, as trustee, a definite sum of money with which to settle the claims pro rata, after the named creditors had agreed to accept such settlement.

The board of directors, acting in the manner prescribed by law, and not the stockholders of a corporation, conducts and controls the business and property of the corporation (sec. 5933, Rev. Codes 1921; *Raish* v. *Orchard Canal Co.,* 67 Mont. 140, 218 Pac. 655); the payment of approved claims is but an incident to the conducting of the business in which the corporation is engaged.

No substantial error appearing in the record, the judgment must be affirmed. It is so ordered.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.