304 P.2d 912

A. Raymond JOHNSON,
Plaintiff-Respondent,

v.

BURLEY IRRIGATION DISTRICT,
a Corporation, Defendant-
Appellant.

No. 8333.

Supreme Court of Idaho.
Dec. 12, 1956.

Nielson & Nielson, Burley, for appellant.

Herman E. Bedke, Burley, for respond-ent.

SMITH, Justice.

Respondent brought this action to recover damages from appellant for injury to a 1952 crop of potatoes.

Appellant, for a time prior to and during 1952, was a duly incorporated, existing and operating irrigation district under the laws of the State of Idaho.

Respondent during 1952 leased and farmed the NE¼ of the SW¼ of Sec. 8, Twp. 11 South, Range 23 E.B.M., in Cassia County. He lived on his own farm situate some distance from the leased land.

A main canal of appellant, designated as H–12, extended in a general north and south direction, and carried irrigation water to the north, along the east boundary of respondent's leased land. A branch canal or lateral, known as H–12B, intersected such main canal at a point some 440 feet north of the southeast corner of the leased land. The lateral, about two and one-half to three feet deep, with a five foot base, was constructed on a fill with the top of its banks some five and one-half feet or more higher than the surrounding terrain; it extended diagonally northwesterly across respondent's leased land and then north along the line common to the west boundary line of said land, and the east boundary line of land farmed by one Baker, situate to the west of the leased land. The lateral supplied irrigation water to four users including respondent and Baker. Baker's head gate for the outlet of his water was located on the north extension of the lateral. His irrigation ditch leading from the lateral was designed to accommodate a stream of 150 miners inches of water. This stream was taken out of the lateral by means of flash boards placed in the lateral's head gate structure; this backed up the water in the lateral to a point just beyond the east boundary of the portion of the leased land hereinafter mentioned planted by respondent to potatoes.

Respondent during the 1952 farming season planted to potatoes the westerly 10.32 acres of his leased land, situate immediately to the south of the lateral canal. This tract sloped downward a drop of approximately one foot from its west to its east side; it was effectively diked along its north boundary by the banks of the lateral, along its east and south boundaries by dikes and along its west boundary by the banks of an irrigation ditch.

The lateral canal had been dry for some days prior to September 22, 1952. The morning of September 22nd, and thereafter on one occasion or more, a ditch rider of appellant turned water into the lateral from the main canal, for irrigation of the Baker lands solely. September 26, 1952, during the late afternoon, a break was discovered in the south bank of the lateral at a point about midway on the north boundary of the 10.32 acre tract planted to potatoes. Some four to six feet of the south bank and a portion of the floor of the lateral had been washed away. The potato land was entirely covered with water, which had flowed through the break in the lateral, to the approximate depth of one foot at its upper or west boundary, and two feet at its lower or east boundary. Most of the crop of potatoes, then matured and ready for harvest, were ruined as a direct result of the flooding.

Respondent predicated his action for damages against appellant district on three counts of negligence: First, that appellant negligently turned into the lateral canal an excessive amount of irrigation water, more than the lateral could carry, in attempting to deliver water to the Baker lands; Second, that appellant negligently permitted the banks of the lateral to become infested with gophers and allowed the gophers to burrow at will into, and thereby weaken and break, the banks of the lateral, thusly permitting the water to escape from the lateral and by the resultant flooding, to damage respondent's potato crop; Third, that appellant negligently failed to inspect the lateral during the 1952 farming season thereby to ascertain whether the lateral was safe for the transportation of water.

Appellant denied negligence on its part, and affirmatively alleged that on September 24, 1952, the water escaped onto respondent's lands from the lateral canal through a break caused by gophers burrowing into the banks of the lateral.

The case was tried to a jury. During the course of the trial the court denied appellant's motions for nonsuit and directed verdict. The jury returned a verdict of damages in favor of respondent followed by entry of judgment thereon. The trial court thereafter denied appellant's motions for judgment notwithstanding the verdict and a new trial. Appellant perfected an appeal from the judgment and the order denying a new trial. The disposition of the appeal will only require consideration of the questions raised by the appeal from the judgment.

Appellant by its assignments of error urges insufficiency of the evidence to sustain the verdict of the jury. Appellant contends that while the evidence conclusively shows that gophers—wild animals—digging into the banks of the lateral caused the break, appellant cannot be held responsible for those acts of the wild animals since they were not under appellant's con-

trol. Appellant further contends that the evidence fails to show that it was negligent in the operation of the lateral canal or that it could have anticipated the break in its banks.

The evidence though conflicting in some regards fairly reflects proof of the facts hereinafter set forth.

A ditch rider of appellant on September 23, 1952, turned from the main canal into the lateral an estimated stream of some 150 miners inches of water for irrigation of Baker's land. The ditch rider then went to Baker's head gate and after observing that the full stream did not arrive there, went about his usual duties. The next day he turned more water into the lateral but did not again check the water at Baker's head gate. The evidence indicates, though not clearly, that once again he may have turned additional water into the lateral intended for Baker's use. In no such instance did he attempt to ascertain the reason for the increased amount of water, to supply Baker's stream at his head gate.

A stream of 150 inches of water, backed up in the lateral by flash boards at Baker's head gate, raised the level of the water in the lateral to within about six inches of the top of the lateral along the north boundary of respondent's potato tract.

The morning of September 26th Baker noticed that he wasn't getting his full stream of water because the irrigation of certain of his lands, to which he had set the water the night before, was not completed although his normal stream would have covered the land. He did not at that time investigate the cause of the water shortage but attended to business in a nearby town. When he returned during the late afternoon no water was coming through the lateral to his head gate. He then went to the head of the lateral at the main canal and there ascertained that the water was flowing from the main canal into the lateral. He turned the water from the lateral back into the main canal and then notified respondent that the lateral had broken.

About July 24, 1952, respondent noticed water seeping from the bank of the lateral bordering his potato tract which appeared caused by gophers abounding in the vicinity. He repaired the damage to some extent; he then called appellant's manager who came to the scene of the seepage and made further repairs of the canal bank.

Appellant district developed that it maintains a rodent control program and makes expenditures each year for that purpose; that it supplies poisoned grain, gopher bombs and cyanide gopher guns intended for control of gophers; that during the year 1952 it spent $3 in rodent control, for the purchase of poisoned grain, although there could have been a carry-over of supplies from the previous year. Appellant's repair foreman was experienced with

gopher holes, stating, "We have fixed a lot of them." He decided that a gopher hole caused the break in the bank of the lateral. The break was shaped like an inverted "V," four feet wide at the top and seven feet wide at the bottom, which indicated the cause to be a gopher hole.

Appellant's ditch rider did not inspect the lateral during the days September 23rd to 26th, inclusive. There was no path on the banks, or on either side of the lateral; its banks were covered by a dense, tall growth of sweet clover and weeds; for that reason it would have been difficult for a person to walk along the banks of the lateral. Appellant's regulations required ditch riders to patrol its canals and laterals. Appellant's manager offered the explanation, that there would be no occasion to patrol the lateral as long as the water was delivered at the Baker head gate, stating, "You don't go and patrol if your water is there. If your water wasn't there, you would go and look for trouble."

Respondent's ten acres of potatoes were covered with approximately 15 acre feet of water. Fifteen acre feet of storage water would require a flow of 150 miners inches of water over a continuous period of two and one-half days, not considering seepage and evaporation.

■ The foregoing facts, though disputed in some instances, justified a finding by the jury either, that water in some considerable quantity, more than the lateral could carry safely, was emptied into the lateral while checked and backed up by flash boards at Baker's head gate, which caused the banks of the lateral to overflow and break; or, that seepage through a gopher hole, enlarged to a stream sufficient to break the bank of the lateral; also, that water had escaped through the break in the lateral in the quantity of not less than 15 acre feet, onto respondent's ten acres of potatoes; that the water had so escaped for a period of not less than two and one-half days during the time extending from the morning of September 23rd, when the water was turned into the lateral, to late afternoon of September 26th, when the flooded condition of the land was discovered.

Either situation aforesaid would justify a finding by the jury of negligence on appellant's part in maintaining the lateral. Particularly is this so in the light of appellant's knowledge of the activities of gophers burrowing in the banks of its canals, including the lateral; also in view of appellant's failure to patrol the lateral during the period of time under consideration, thereby to ascertain the cause of diminution of the stream turned into the lateral for Baker's use, though admittedly such stream was augmented at least once September 24th, and perhaps again the next day.

The statutory rule in Idaho consistently adhered to is that owners of ditches, canals

and conduits "must carefully keep and maintain the same, and the embankments, flumes, or other conduits, by which such waters are or may be conducted, in good repair and condition, so as not to damage or in anyway injure the property or premises of others." I.C. § 42–1204. Albrethson v. Carey Valley Reservoir Co., 67 Idaho 529, 186 P.2d 853, citing a wealth of authorities both from Idaho and neighboring states.

Appellant asserts that the accident which caused the flooding of respondent's land was unavoidable, since caused by an agency akin to an act of God or a third person. Appellant cites Nahl v. Alta Irr. Dist., 23 Cal.App. 333, 137 P. 1080, 1082, wherein the damage was "occasioned solely by a superhuman cause or one beyond the control of human agency," i. e., by torrential and unprecedented rains causing overflow of an irrigation ditch proven to have been properly constructed and maintained. Appellant also cites Butler v. Paradise Valley Irr. Dist., 117 Mont. 563, 160 P.2d 481, wherein conflicting though substantial evidence supported denial of recovery for damages to land caused by flooding, due to overflow of an irrigation canal proven to have been properly maintained, whereas an obstruction therein by the plaintiff interfered with the free flow of the water and was causative of the flooding of his land. Obviously, both of these cases involved facts and circumstances entirely dissimilar to the one here. Both of those cases, however, recognize the rule long established in Idaho, that liability for damages in the construction or operation of a ditch or canal must rest in negligence. Further, in Nahl v. Alta Irr. Dist., supra, appears an excellent statement of the rule, applicable to the facts shown in the case here under consideration, as follows [23 Cal.App. 333, 137 P. 1081]:

> "Nor is a ditch or canal owner responsible for that which is solely the result of the act of God, or inevitable accident. It is only when human agency is combined with the act of God and neglect occurs in the employment of such agency that a liability for damage results from such neglect. [Citations.]"

Even though the actions of gophers be regarded as akin to the acts of God or of third persons, as appellant insists, nevertheless, those actions of gophers, conceded by appellant to have been the efficient proximate cause of respondent's damage, were well known to appellant; and appellant in the exercise of ordinary care by reasonable means could have guarded against the same and effects thereof; but having failed so to do, appellant must respond in damage. "The distinguishing characteristic of an 'act of God' is that it proceeds from the force of nature alone, to the entire exclusion of human agency." Rice v. Oregon Short Line R. Co., 33 Idaho 565, 576, 198

P. 161, 164. See, also, Oregon-Washington R. & Nav. Co. v. Williams, 9 Cir., 268 F. 56; Inland Power & Light Co. v. Grieger, 9 Cir., 91 F.2d 811, 112 A.L.R. 1075; Jordan v. City of Mount Pleasant, 15 Utah 449, 49 P. 746; Raish v. Orchard Canal Co., 67 Mont. 140, 218 P. 655; Oklahoma City v. Tarkington, 178 Okl. 430, 63 P.2d 689; Dover v. Georgia Power Co., 46 Ga. App. 630, 168 S.E. 117; Bruton v. Carolina Power & Light Co., 217 N.C. 1, 6 S.E.2d 822; Hoosac Tunnel & W. R. Co. v. New England Power Co., 311 Mass. 667, 42 N.E.2d 832; Greenburg v. City of Steubenville, Ohio App., 72 N.E.2d 125; Perkins v. Vermont Hydro-Electric Corporation, 106 Vt. 367, 177 A. 631; 56 Am.Jur., Waters, sec. 171, p. 637.

Appellant has assigned error of the trial court in refusing to give appellant's requested instruction on the so-called act of God theory. The court properly refused to give the requested instruction because it was covered by Instruction No. 18; further, the context of the instruction given was more favorable to appellant than was its requested instruction.

The province of this Court is to determine whether there is substantial evidence to justify the jury in finding negligence on appellant's part, due to one or more of the circumstances alleged by respondent, which proximately caused the damage to respondent's potato crop. We find, as hereinbefore pointed out, that there is substantial, though conflicting, evidence to sustain the verdict and judgment in respondent's favor. Zenier v. Spokane International Railroad Company, 78 Idaho 196, 300 P.2d 494.

We deem it unnecessary to consider appellant's remaining assignments of error.

The judgment of the trial court is affirmed. Costs to respondent.

TAYLOR, C. J., and KEETON, PORTER and ANDERSON, JJ., concur.