NOBLE, Appellant, v. FARMERS UNION TRADING CO. ET AL., Respondents.

No. 8938

Submitted February 10, 1950. Decided April 6, 1950.

216 Pac. (2d) 925

Messrs. Collins and Burns, Dillon, for appellant. Mr. Collins argued the case orally.

Mr. Frank E. Blair, Virginia City, Mr. J. J. McCaffery, Jr., Butte, Mr. Frank J. Roe, Butte, for respondents. Mr. Blair argued the case orally.

MR. CHIEF JUSTICE ADAIR:

On March 20, 1947, the plaintiff R. F. Noble, owner of one share of the voting stock of Farmers Union Trading Company, a corporation, commenced this suit in equity, in the district court of Madison county, seeking to quiet title to the south 51 feet of two town lots in Sheridan, Montana, of which he avers the corporation "is the sole and exclusive owner in fee simple title," and naming the corporation and one Charles

Wiggins as defendants therein. In the district court plaintiff experienced no little difficulty in pleading ultimate facts sufficient to show a right in himself to institute and prosecute the action and to justify interference by a court of equity with the conduct, management and internal workings and business of the corporation *prima facie* vested, by law, in its officers and directors. Upon demurrer allowed to his second amended and supplemental complaint, plaintiff stood on his pleadings and suffered judgment of dismissal to be entered against him. This is an appeal from that judgment.

The question presented by the appeal is: Do the averments in plaintiff's pleading show a right in him to maintain this suit in his own name and as a stockholder?

The second amended complaint here involved alleges: That the defendant Farmers Union Trading Company is "a farmers cooperative association, duly incorporated and existing under and by virtue of the laws of the state of Montana;" that its stockholders number 75 or more persons; that the plaintiff R. F. Noble is one of such stockholders owning corporate stock of the par value of $500; that plaintiff has never been a director of the corporation; that the by-laws of the corporation provide for the holding of the regular annual meeting of the stockholders for the election of directors on the first Monday of December of each year and at no other time; that the corporation has frequently permitted a full year to pass without calling or holding any meeting of the stockholders; that plaintiff has no information as to when, if ever, another stockholders meeting will be held; that since January 1937 the corporation "has been and still is the sole and exclusive owner in fee simple title" of the south 51 feet of lots 5 and 11 in block 36 of the town of Sheridan, Madison county, Montana, which is the only land owned by the corporation; that the defendant Charles Wiggins "claims some right, title, interest or estate in, or lien or encumbrance upon the real property above described; but that every such alleged claim is without foundation and void;" that "on information and belief" the defendant Wiggins has demanded and

received from the defendant corporation $70 per month as alleged rental for the use and occupancy of *part* of such real property; that "upon information and belief" since the commencement of this suit the defendant Wiggins has demanded that such payments be increased to $100 per month; that "unless the sum last mentioned is regularly paid to him, he [Wiggins] will commence an action in court to compel the payment thereof, or to obtain possession of said lands with damages;" that before commencing this action plaintiff made demand upon the directors and officers of the corporation "that they take the necessary proceedings in court to quiet the title * * * as against all claims, alleged claims and pretentions" of the defendant Wiggins; that the "board of directors have failed and refused and still fail and refuse to institute any action for that purpose, or to take steps to establish or quiet the title" of the corporation in the properties or any part thereof; that the question of quieting title to the lands of the corporation is one of common and general interest to the stockholders; that "it is impractical to join" the stockholders "as parties to this action or to bring them to court within a reasonable time; for which reason *this action is brought by the plaintiff for his own benefit and also for the benefit of all others similarly interested, who may elect to come in and contribute to the expenses of this action.*" (Emphasis supplied.) The prayer for relief is that the defendant Wiggins be required to appear and set forth the nature of all claims by him asserted in the described lands adversely to the ownership of the corporation to the end that such claims be cancelled and held for naught; that title to the property be established and forever quieted in the defendant corporation; that defendant Wiggins and all persons in privity with him be forever foreclosed from asserting any claim against the lands adversely to the corporation and that plaintiff recover his costs.

A corporation is not a person. In re Clarke's Will, 204 Minn. 574, 284 N. W. 876. It is merely a legal fiction created for convenience in conducting business. Whipple v. Industrial Commission, 59 Ariz. 1, 121 Pac. (2d) 876, 878. It can be

created only by or under legislative authority. 1 Fletcher Cyc., Corporations (Perm. Ed.), sec. 15, pp. 36, 37, note 65. Being a mere creature of law established for special purposes a corporation receives all its powers from the Act creating it. People ex rel. Cairo & St. L. R. Co. v. Dupuyt, 71 Ill. 651, 655. It acts through its board of directors and officers (R. C. M. 1947, sec. 14-206 and sec. 15-401) and its property is not subject to the control or disposition of its members or stockholders. Sellers v. Greer, 172 Ill. 549, 50 N. E. 246, 248, 40 L. R. A. 589. Compare: North Hudson County R. Co. v. May, 48 N. J. L. 401, 19 Vroom 401, 5 A. 276; Judd v. City Trust & Savings Bank, 133 Ohio St. 81, 12 N. E. (2d) 288; Stokes v. Continental Trust Co., 186 N. Y. 285, 78 N. E. 1090, 1093, 12 L. R. A., N. S., 969, 9 Ann. Cas. 738; Frank Gilbert Paper Co. v. Prankard, 204 App. Div. 83, 198 N. Y. S. 25, 27.

The term "corporation" includes all associations and joint stock companies having or exercising any of the powers or privileges of corporations not possessed by individuals or partnerships. Constitution of Montana, Art. XV, sec. 18; R. C. M. 1947, secs. 14-201 to 14-222.

A corporation has a real individuality, In re Clarke's Will, supra, and is in law an entity entirely separate and distinct from its stockholders. McCarroll v. Ozarks Rural Electric Co-op. Corp., 201 Ark. 329, 146 S. W. (2d) 693, 695; Matthews v. Minnesota Tribune Co., 215 Minn. 369, 10 N. W. (2d) 230, 232, 147 A. L. R. 147, 150; State ex rel. Oklahoma Employment Security Commission v. Tulsa Flower Exchange, 192 Okl. 293, 135 Pac. (2d) 46, 48; Department of Treasury of Indiana v. Crowder, 214 Ind. 252, 15 N. E. (2d) 89, 91; Rapides Dairy Dealers' Co-op. Ass'n v. Mathews, La. App., 158 So. 247, 249; Wild v. Standard General Realty Co., La. App., 145 So. 58, 59; Levert v. Shirley Planting Co. 135 La. 929, 66 So. 301; Commonwealth v. Muir, 170 Ky. 435; 186 S. W. 194, 196; Ulmer v. Lime Rock R. Co., 98 Me. 579, 57 A. 1001, 1006, 1007, 66 L. R. A. 387; Jackson v. Hooper, 76 N. J. Eq. 592, 593, 75 A. 568, 571, 27 L. R. A., N. S., 658; Ex parte Rickey, 31 Nev. 82, 100 Pac. 134,

140, 135 Am. St. Rep. 651; People's Pleasure Park Co. v. Rohleder, 109 Va. 439, 61 S. E. 794, 796, 63 S. E. 981; State ex rel. City of Tacoma v. Tacoma Ry. & Power Co., 61 Wash. 507, 112 Pac. 506, 508, 32 L. R. A., N. S., 720; Aiello v. Crampton, 8 Cir., 201 F. 891, 893.

R. C. M. 1947, Title 14, Chapter 2, sections 14-201 to 14-222 set forth the special statutes of this state governing the incorporation and management of cooperative associations for the purpose of trade or prosecuting any branch of industry, or the purchase and distribution of commodities for consumption, or the borrowing or lending of money among members for industrial purposes.

R. C. M. 1947, sec. 14-202 provides: "No person shall be permitted to subscribe for or control or own more or less than one share of the common stock of such association."

R. C. M. 1947, sec. 14-205 provides that associations formed under such Chapter "shall be *bodies corporate* and politic for the period for which they are organized, not exceeding forty years; may sue and be sued; * * * may own, possess, and enjoy so much real and personal property as shall be necessary for the transaction of their business, and may sell and dispose of the same. They may borrow money and may pledge their property, both real and personal, to secure the payment thereof, and they shall have and exercise all powers necessary and requisite to carry into effect the objects for which they may be formed, and such as are usually exercised by co-operative associations, subject to all duties, restrictions and liabilities set forth in the general laws in relation to similar corporations, except so far as the same may be limited or enlarged by this act." (Emphasis supplied.)

R. C. M. 1947, sec. 14-206 provides: "The officers of the association shall consist of a board of directors, *who shall exercise the corporate powers invested in such association* * * * a president, vice-president, secretary, and treasurer, to be elected by the stockholders as provided by the by-laws. All by-laws shall

be adopted by the stockholders of the association." (Emphasis supplied.)

R. C. M. 1947, sec. 14-214 provides: "The profits or net earnings of such associations shall be distributed to those entitled thereto, at such times as the by-laws shall prescribe, which shall be as often as once in twelve months. *If such associations for five consecutive years shall fail to declare a dividend* upon the shares of its paid-up capital, *the holders of the majority* of the par value of the issued and outstanding capital stock, *by petition,* setting forth such fact, *may apply to the district court of the county,* wherein is situated its principal place of business in this state, *for its dissolution.* If, upon hearing, the allegations of the petition are found to be true, the court may adjudge a dissolution of the association." (Emphasis supplied.)

R. C. M. 1947, sec. 14-215 provides: "* * * No association organized under this act shall be required to do or perform anything not specially required herein *in order to become a corporation,* or to continue its business as such." (Emphasis supplied.)

R. C. M. 1947, sec. 14-221 provides: "The secretary of state shall not issue any certificate of incorporation to any corporation or association except in compliance with this act."

A corporation may lease from third persons property for the use of the corporation and its directors were *prima facie* empowered to lease an office at the place designated in its charter or articles of incorporation for the principal office of the corporation. McConnell v. Combination Min. & Mill. Co., 31 Mont. 563, 573, 79 Pac. 248. Likewise the directors may lease a part of the corporate property without first obtaining the consent of the stockholders. Seal of Gold Min. Co. v. Slater, 161 Cal. 621, 120 Pac. 15. "Corporate authority to take a lease of property need not necessarily rest upon an express grant of power. In this respect it is no different from other acts and transactions of the corporation. If the taking of a particular lease is within the purposes of the corporation and not foreign to the business for which it was created, it may be justified as an exercise of the implied powers of the corporation. Corporations

526

organized to carry on a * * * trading business necessarily have power to take a lease of property when necessary to the conduct of such business.'' 7 Fletcher Cyc., Corporations (Perm. Ed.), sec. 2977, p. 22. Compare Polacheck v. Michiwaukee Golf Club, 198 Wis. 78, 223 N. W. 233; Thauer v. Gaebler, 202 Wis. 296, 232 N. W. 561, 563.

The functions of stockholders are exceedingly limited. Every stockholder impliedly agrees, on becoming a member of the corporation, to the execution of all the powers conferred by law on the corporation. He consents that the management and control of the corporate business and interests shall be vested in the board of directors and agrees that such board shall exercise the corporate powers vested in the corporation. He knows that ordinarily, as a stockholder, he must abide by the decision of the directors or the stockholders in their aggregate capacity, as the case may be, upon all matters which the law commits to their control and determination. He is charged with the knowledge that generally, in the absence of statutory authority, the stockholders cannot act for the corporation either individually or collectively; that by reason of being a stockholder he has no agency for the corporation; that he cannot bind it and that direct participation in the management of corporate affairs is not a right which the stockholders, as such, can claim. 18 C. J. S., Corporations, sec. 495, pages 1171, 1172, and R. C. M. 1947, sec. 14-206. ''He has no direct control over the money and property of the corporation, the right to control and manage the corporate property being vested in the corporation and exercisable through the directors, officers, and agents.'' 18 C. J. S., Corporations, sec. 512, page 1191, note 45. However, a stockholder dissatisfied with the internal management of a corporation has a right to call his fellow stockholders' attention to conditions which he, in good faith, regards as prejudicial to the best interests of the corporation and its stockholders. Grayburg Oil Co. v. Jarratt, Tex. Civ. App., 16 S. W. (2d) 319. Compare: First Nat. Bank of Waterloo v. Fireproof Storage Bldg. Co., 199 Iowa 1285, 202 N. W. 14, 17; Mt. Vernon Bank & Trust Co. v. Iowa Employment

Security Comm., 233 Iowa 1165, 11 N. W. (2d) 402, 403. "The board of directors, acting in the manner prescribed by law, and not the stockholders of a corporation, conducts and controls the business and property of the corporation (Sec. 5933, Rev. Codes 1921 [R. C. M. 1947, sec. 15-401]; Raish v. Orchard Canal Co., 67 Mont. 140, 218 Pac. 655); the payment of approved claims is but an incident to the conducting of the business in which the corporation is engaged." Pioneer Minerals Corp. v. Larabie Bros. Bankers, 99 Mont. 358, 43 Pac. (2d) 884, 886. See also: Hanrahan v. Anderson, 108 Mont. 218, 231, 90 Pac. (2d) 494.

In 6 Thompson on Corporations (3rd Ed.), sec. 4506, pp. 390-392, it is said: "The minority stockholders can not dictate the policy of the corporation, and can only interfere with its management when the act of the majority is fraudulent or beyond their powers or the powers of the corporation. The minority stockholders have, of course, the right to present their views at stockholders' meetings, to vote on questions of corporate policy, and to be informed of the condition of the corporation, but the really valuable right possessed by them is to compel the majority to act honestly and within the bounds laid down by the corporate charter and the laws. In other words, the minority stockholders can only question the acts of the directors or majority stockholders where such acts are ultra vires, illegal or fraudulent. Courts generally decline to interfere with the internal management of a corporation at the instance of minority stockholders, unless the majority stockholders are acting ultra vires or a strong case of fraud or mismanagement is shown. The minority stockholder impliedly agrees at the time he acquires his stock that the will of the majority shall govern in all matters coming within the limits of the charter or the act of incorporation. There can be no interference by the minority stockholders with acts within the discretionary powers of the directors of majority stockholders, or pursuant to law. * * * It is not enough to allow this interference that the corporation is not being successfully operated or is operated in a way contrary to the interests of the minority stockholder. 'To allow a dissatisfied minority to arraign the di-

rectors before the courts of the country whenever in the opinion of such minority a wiser or better policy could have been pursued, would practically put an end to the benefits claimed to result from associated capital'.''

The averment that the defendant Wiggins ''has demanded and received from said cooperative association the sum of $70.00 per month as alleged rental for the use and occupancy of *part* of the real property'' of which the corporation is alleged to be ''the sole and exclusive owner in fee simple title'' does not of itself show that the alleged act of leasing is either *ultra vires,* illegal or fraudulent. One may be the sole owner of the fee to the real estate and not own the store building situate thereon, nor have the right to the use or possession of such building. One may be owner of the fee and yet not be entitled to ''the use and occupancy of *part* of the real property.'' An owner of the fee may enter into a lease of his property for one, 10 or 40 years and thereby surrender his right to ''the use and occupancy'' of the property in part or in whole. The owner of the fee of a hotel property which he has leased to another may still be required to pay a rental to entitle him to ''the use and occupancy'' of a room or of office space therein.

''Ordinarily, where a cause of action exists in favor of a corporation, suit must be brought by the corporation itself in the corporate name, and cannot be brought by a stockholder on his own behalf, or on behalf of himself and others. * * *'' 13 Fletcher Cyc., Corporations, (Perm. Ed.) sec. 5945, p. 301.

R. C. M. 1947, sec. 93-2801, requires that every action must be ▮▮▮ prosecuted in the name of the real property in interest. The object of this statute ''is to save a defendant, against whom a judgment may be obtained, from further harassment or vexation at the hands of other claimants to the same demand, and to prevent a claimant from making a simulated transfer, and thus defeating any just counter-claim or set-off which defendant would have to the demand if pressed by the real owner.'' 1 Bancroft's Code Pleading, sec. 122, p. 234.

By alleging that the defendant Farmers Union Trading Com-

pany "is the sole and exclusive owner in fee simple title of the lands * * * described" plaintiff's pleading affirmatively shows that the defendant corporation is the real party in interest, R. C. M. 1947, sec. 93-2801, supra, and as such authorized to bring and prosecute to final decree an action to quiet title to the real estate here involved. R. C. M. 1947, sec. 93-6203.

A stockholder cannot sue, as a representative of the corporation by bringing an action at law, notwithstanding the corporation could have recovered in an action at law. Thus the stockholder's suit is always a suit in equity unless otherwise provided by statute. 13 Fletcher Cyc., Corporations (Perm. Ed.), sec. 5944, pp. 299-301.

"A stockholders' derivative suit is an invention of courts of equity and is recognizable only in equity and cannot be maintained at law." Liken v. Shaffer, D. C., 64 F. Supp. 432, 441.

What then must the complaining stockholder show to warrant interference by a court of equity with the internal management of a corporation?

The early English case of Foss v. Harbottle, 2 Hare 461, 67 English Reports 189, decided in 1843, was brought by Ross and Turton, two shareholders of Victoria Park Company, a corporation, on behalf of themselves and all other stockholders (except one named as a defendant) against the directors, the named shareholder and the corporation's solicitor and architect. There, as here, a demurrer was sustained to the pleading of the plaintiff shareholders,—the suit was dismissed and plaintiffs appealed. There plaintiffs charged defendants with concerting and effecting fraudulent and illegal transactions, whereby the property of the corporation was misapplied, aliened and wasted; that there had ceased to be a sufficient number of qualified directors to constitute a board; that the corporation had no clerk or office and sought the appointment of a receiver and a decree against defendants to make good the loss. The appellate court, in affirming the trial court's action in allowing the demurrer and

dismissing the suit, speaking through Vice-Chancellor Sir James Wigram, recognized that the right of action was in the defendant corporation and said:

"It was not, nor could it successfully be, argued that it was a matter of course for any individual members of a corporation thus to assume to themselves the right of suing in the name of the corporation. In law the corporation and the aggregate members of the corporation are not the same thing for purposes like this; and the only question can be whether the facts alleged in this case justify a departure from the rule which, *prima facie*, would require that the corporation should sue in its own name and in its corporate character, or in the name of someone whom the law has appointed to be its representative.

"* * * If a case should arise of injury to a corporation by some of its members, for which no adequate remedy remained, except that of a suit by individual corporators in their private characters, and asking in such character the protection of those rights to which in their corporate character they were entitled, I cannot but think that the principle so forcibly laid down by Lord Cottenham in Wallworth v. Holt (4 Myl. & Cr. 635; see also 17 Ves. 320, per Lord Eldon) and other cases would apply, and the claims of justice would be found superior to any difficulties arising out of technical rules respecting the mode in which corporations are required to sue.

"But, on the other hand, it must not be without reasons of a very urgent character that established rules of law and practice are to be departed from, rules which, though in a sense technical, are founded on general principles of justice and convenience; and the question is whether a case is stated in this bill entitling the Plaintiffs to sue in their private characters. (His Honor stated the substance of the Act, sections 1, 38, 39, 43, 46, 47, 48, 49, 67, 70, 114 and 129 [supra, p. 464, n. et seq.].)"

The vice-chancellor held plaintiff's pleading to be fatally defective because it failed to allege the absence of at least an acting or *de facto* board of directors empowered to authorize the

bringing of the suit and because it was the duty of the two plaintiff stockholders complaining of what has been done to have called a meeting of the stockholders or to have attended at some regular annual meeting of the stockholders and there obtained the action of the majority on the matters in issue saying that such majority of the stockholders may have approved of and ratified the action of the board of directors in which event the whole body of shareholders would have been bound thereby.

In Mozley v. Alston, 1 Phil. 790, 19 English Chancery 790, 41 Eng. L. R. Full Reprint, 833, decided in 1847, the English appellate court expressly approved of the principle and practice announced and adopted in the earlier case of Foss v. Harbottle, supra.

The English case of Gray v. Lewis, Law Reports, 8 Ch. App. 1035, decided in 1873, was brought by one shareholder of Charles Laffitte & Co., Ltd., a corporation, on behalf of himself and all other shareholders except those named as defendants, seeking to compel the directors of the corporation and a bank to restore £230,000 alleged to have been illegally and improperly taken from the corporation's funds. Therein (p. 1051) Sir James, L. J., said:

"Now in this case I am of opinion that the only person—if you may call it a person—having a right to complain was the incorporated society called Charles Laffitte & Co. In its corporate character it was liable to be sued, and was entitled to sue; and if the company sued in its corporate character, the Defendant might allege a release or a compromise by the company in its corporate character—a defense which would not be open in a suit where a plaintiff is suing on behalf of himself and other shareholders. I think it is of the utmost importance to maintain the rule laid down in Mozley v. Alston and Foss v. Harbottle, to which, as I understand, the only exception is where the corporate body has got into the hands of directors and of the majority, which directors and majority are using their power for the purpose of doing something fraudulent against the minority, who are overwhelmed by them, as in Atwool v. Merryweather, where

Vice-Chancellor Wood, under those circumstances, sustained a bill by a shareholder on behalf of himself and others, and there it was after an attempt had been made to obtain a proper authority from the corporate body itself in public meeting assembled.''

In the English case of MacDougall v. Gardiner, 1 Law Reports, Chancery Division, 13, at p. 21, Sir W. M. James, L. J., said: ''I am of opinion that this demurrer ought to be allowed. I think it is of the utmost importance in all these companies that the rule which is well known in this court as the rule in Mozley v. Alston and Lord v. Copper Miners' Company and Foss v. Harbottle should be always adhered to; that is to say, that nothing connected with internal disputes between the shareholders is to be made the subject of a bill by some one shareholder on behalf of himself and others, unless there be something illegal, oppressive, or fraudulent—unless there is something *ultra vires* on the part of the company *qua* company, or on the part of the majority of the company, so that they are not fit persons to determine it; but that every litigation must be in the name of the company, if the company really desire it. Because there may be a great many wrongs committed in a company—there may be claims against directors, there may be claims against officers, there may be claims against debtors; they may be a variety of things which a company may well be entitled to complain of, but which, as a matter of good sense, they do not think it right to make the subject of litigation; and it is the company, as a company, which has to determine whether it will make anything that is wrong to the company a subject-matter of litigation, or whether it will take steps itself to prevent the wrong from being done.''

The leading case of Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, decided January 16, 1882, reviews the above cited English cases and announces the rule in the United States as to what must be shown by a stockholder in a corporation to enable him to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which

the corporation itself is the appropriate plaintiff. After listing a number of grievances that will sustain such an action the court said: "But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.

"The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts, should be stated with particularity * * *"

So important did the court deem the principle announced by it on January 16, 1882, in the Hawes v. Oakland case, supra, that one week later, namely on January 23, 1882, it incorporated the principle in and adopted Equity Rule 94 which requires that before the stockholder may sue he must first make efforts to secure relief "from the managing directors or trustees and, if necessary from the shareholders" unless such effort is useless. See Rule 23(b) of the Federal Rules of Civil Procedure, 28 U. S. C. A. and Long v. Stites, 6 Cir., 88 F. (2d) 554, certiorari denied, 301 U. S. 706, 57 S. Ct. 939, 81 L. Ed. 1360, dismissing a bill for insufficient allegations and reviewing the prior federal decisions.

The annotation to Cadwell v. Eubanks, 326 Mo. 185, 30 S. W. (2d) 976, in 72 A. L. R., at page 628, states the general rule thus: "The cases are uniform in holding that there must be a request

that the stockholders as a body sue the directors, or that an action be brought for their benefit, before an individual stockholder may bring an action in the interest of the corporation—unless such a request would be useless and unavailing. In other words, an individual stockholder must exhaust all means of redress within the corporation before bringing an action in the interest of the corporation." For the cases supporting the above rule see 72 A. L. R. at pages 628-638.

In Allen v. Montana Refining Co., 71 Mont. 105, 122, 227 Pac. 582, 587, decided in 1924, this court said:

"In any event, in the absence of a showing that a majority of the voting stock was held by persons who refused their aid to obtain redress for the alleged wrong of which complaint is now made, and in the absence of any showing that the case will not admit of delay necessary to obtain action by the stockholders, it was incumbent upon plaintiffs that they appeal to the stockholders and that they be denied relief before they could institute this action; in other words, a court will not do for minority stockholders what they may do for themselves. * * *

"Our conclusion upon this branch of the case is that plaintiffs failed to show that they exhausted all available means of redress within the corporation itself; hence the court did not err in refusing relief. 14 C. J., 943, 944."

In Cobb v. Lee, 80 Mont. 328, 337, 260 Pac. 722, 724, decided in 1927, this court said: "Before stockholders can go into court, they must first exhaust their remedy within the corporation itself. If they hold a majority of the stock, they may control the election of directors (Section 5937, R. C. 1921), or, if they hold two-thirds of the stock, they may remove an objectionable director, having caused to be called a meeting for that purpose. Section 5940, Id.; Brandt v. McIntosh, supra, (47 Mont. 70, 130 Pac. 413).

"The court will not do for stockholders that which they may do for themselves. Allen v. Montana Refining Co., supra, (71 Mont. 105, 227 Pac. 582). A minority stockholder must make an earnest effort with the managing body of the corporation to in-

duce remedial action on their part, and this must appear to the court. 'If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he. complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.' Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827.

"'* * * the evidence tends to show that during 1916 two of the plaintiffs, Alphonso Jackman and E. K. Cheadle, were directors, and that there was not a stockholders' meeting after that year. If there were but three directors, Jackman and Cheadle were a majority of the board. If so, they could have called a meeting of the board (section 5944, R. C. 1921) and have taken the requisite action.''

While this court in the Allen case, supra, and in the Cobb case, supra, quoted with approval from Hawes v. Oakland, supra, and followed and applied the rule therein announced, yet it has been suggested that in the later case of Sullivan v. Mountain, 117 Mont. 224, 160 Pac. (2d) 477, decided in 1945, we departed from that rule. The record filed in this court on the appeal in the latter case, of which we may take judicial notice, Corum v. Hartford Accident & Indem. Co., 67 Cal. App. (2d) 891, 155 Pac. (2d) 710, construing a statute identical with R. C. M. 1947, sec. 93-501-1; La Mesa Lemon Grove, etc. Irr. District v. Halley, 195 Cal. 739, 741, 235 Pac. 999, 1000; Lemmon v. Continental Casualty Co., 350 Mo. 1107, 169 S. W. (2d) 920; 31 C. J. S., Evidence, sec. 50, page 619, discloses that plaintiff's complaint therein pleads ultimate facts showing that Dr. J. B. Sullivan, the plaintiff therein, had exhausted all means of redress within the corporation before he brought his suit and it would appear that the pleader must have had before him the Allen and Cobb cases, supra, when drafting the complaint in that such complaint alleges: (Paragraph I) That the capital stock of the First State Bank of Shelby was 250 shares of the par value of $100 each; (par. II) that plaintiff J. B. Sullivan was a duly elected director and owned 55 shares of such stock

and that he brought the action on behalf of all stockholders for the benefit of the corporation; (par. III) that plaintiff had orally and in writing expressly directed the attention of the members of the board of directors to the conduct of the defendant R. D. Mountain and had demanded that they institute action against Mountain to recover the money of the corporation which he had wrongfully appropriated to his own use; (par. IV) that during the times complained of the directors of the corporation were the defendant R. D. Mountain, J. M. Johnson, O. E. Drake, E. K. Cheadle, Ed McIntyre and the plaintiff J. B. Sullivan; that the directors were the owners of shares of stock in the corporation as follows:

| | |
|---|---|
| Mountain | 80 shares |
| Drake | 30 shares |
| Johnson | 25 shares |
| McIntyre | 55 shares |
| Sullivan | 55 shares |
| Cheadle | 5 shares |
| Total | 250 shares |

Paragraph IV of the complaint then alleges that "the said R. D. Mountain and J. W. Johnson and O. E. Drake and E. K. Cheadle, at all of the times they were directors of said corporation, were and now are intimate friends and that by reason of the close friendship between said persons and the ownership by said R. D. Mountain of the aforesaid shares of stock of said corporation whereby he had and maintained the largest individual vote of shares of stock at all stockholders meetings, and by reason of the fact that the said Messrs. Johnson, Drake and Cheadle were elected directors of the corporation by the voting of his stock by said R. D. Mountain in their favor at the annual meetings of stockholders of said corporation, and for other causes and reasons known to said Messrs. Mountain, Johnson, Drake and Cheadle, and unknown to plaintiff, the said R. D. Mountain dominated and controlled said persons in their actions

as directors and said persons in acting as said directors permitted themselves to be dominated and controlled by said R. D. Mountain and at all times were servient to his demands and directions concerning the affairs of said corporation regardless of the best interests of said corporation."

The complaint also alleges in paragraphs IX and X that said R. D. Mountain was president of said corporation. Clearly from this ultimate fact, Mountain's influence over the directors, alleged to be his intimate friends, would be strong, and since the complaint alleges that they owned 140 shares of the total 250 shares, the plaintiff Sullivan's complaint shows on its face that it would have been useless to have called a meeting of the stockholders to authorize bringing a suit when the owners of a large majority of the stock had already refused to prosecute such suit by their action as directors. While the record shows that the defendant Mountain appearing separately interposed a general demurrer to the complaint, it fails to show that such demurrer was ever argued or passed upon by the trial court, defendant's counsel apparently considering the allegations of the complaint sufficient to show a right in the plaintiff to sue as a minority stockholder.

The defendants filed separate answers. These answers admitted that the capital stock of the bank was 250 shares; that plaintiff owned 55 shares and that he commenced and prosecuted the action on behalf of all other stockholders of the corporation similarly situated for the benefit of the corporation, but denied the other allegations of the complaint and the case was tried on the issues so presented.

The trial court found that: "Whatever profit was made by Mr. Mountain grew out of his connection with the Bank as an officer and he should not be permitted to profit thereby. It is my opinion further, that sufficient information was brought home to the directors of the bank to justify the inference that Mr. Sullivan *exhausted his remedies within the corporation.*" (Emphasis supplied.) The effect of such finding was that plaintiff Sullivan had proved the allegations of his complaint. Judg-

ment was entered in favor of the plaintiff Sullivan and against the defendant Mountain for $3,600 and $528 for the use and benefit of the bank and adjudged that plaintiff also recover from the bank his reasonable attorney fees of $600 to be paid out of the above amounts when collected, and that plaintiff also recover from Mountain his costs taxed at $66.11.

The defendant Mountain alone appealed. One specification of error urged that the trial court erred in finding "that sufficient information was brought home to the directors of the bank to justify the inference that Dr. Sullivan exhausted his remedies with the corporation." In his brief appellant Mountain said "Respondent is permitted to act as a plaintiff only when and if he has, as a minority stockholder, exhausted all means at his disposal, within the corporation, to induce the directors of the Bank to commence a suit upon that cause of action." In support of his contention appellant Mountain cited the Allen case, supra, the Cobb case, supra, Brandt v. McIntosh, 47 Mont. 70, 130 Pac. 413, and Deschamps v. Loiselle, 50 Mont. 565, 148 Pac. 335. Respondent Sullivan's brief cited, quoted from and relied upon the same authorities.

As shown above the complaint in Sullivan v. Mountain, supra, alleges that plaintiff not only demanded that the directors compel Mountain to account to the corporation, but also demanded they institute an action against him. Upon the refusal of the directors to start such action against Mountain, the corporation's president, it was useless for the plaintiff Sullivan to ask them to call a meeting of the stockholders when, as the complaint shows, the directors holding a majority of all stock of the corporation were opposed to starting such an action. Under such circumstances so pleaded and proved the court in holding Sullivan could start and maintain his action did not modify or overrule the Brandt, Cobb, Allen and Deschamps cases.

In the Sullivan case, 117 Mont. at page 228, 160 Pac. (2d) at page 479, this court said: "This court has uniformly held that the above requirement is met, either where it reasonably appears that it would be useless to seek aid from the stockholders or where

a course of conduct is being pursued by the corporation, such as would render an application for relief fruitless.''

In the instant case the complaint does not allege that plaintiff requested the directors to call a special meeting of stockholders or the provisions in the by-laws governing special meetings or that the directors controlled a majority of the stock or that plaintiff had procured a list of the stockholders, or that he had contacted or attempted to contact them, or that he had been denied the right to inspect the corporation's books to obtain the names and addresses of the stockholders, nor did plaintiff allege any *ultra vires* act, fraud or bad faith on the part of the corporation's directors, or on the part of the defendant Wiggins. Such complaint was and is clearly insufficient under the repeated decisions of this court, including the Mountain case, supra.

That a cause of action may exist in favor of the corporation ▉▉▉▉▉ and that the directors decline to commence the action does not empower a minority stockholder to institute and prosecute the suit in his own name. As was said in Hornstein v. Paramount Pictures, Sup. 1942, 37 N. Y. S. (2d) 404, at pages 417, 418, ''* * * 'there may be a variety of things which a company may well be entitled to complain of, but which, as a matter of good sense, they do not think it right to make the subject of litigation' (MacDougall v. Gardiner, [1875] 1 Ch. Div. 13, quoted in Hawes v. City of Oakland, 104 U. S. 450, 457, 26 L. Ed. 827, and in Isaac v. Marcus, 258 N. Y. 257, 263, 264, 179 N. E. 487), and whether or not a corporation shall seek to enforce in the courts a cause of action existing in its favor is, like other business questions, a matter of internal management to be decided by the directors as the executive representatives of the corporation [Citing cases]. Whether the stockholders, as a body and by majority vote, could instruct the directors in such a matter, as seems to be intimated in United Copper Securities Co. v. Amalgamated Copper Co., 244 U. S. 261, 263, 37 S. Ct. 509, 61 L. Ed. 1119, or whether in such a matter the directors are the exclusive representatives of the corporation, as seems to be intimated in Manson v. Curtis, 223 N. Y. 313, 323, 119 N. E. 559,

Ann. Cas. 1918E, 247, is not presented in this case and need not be and is not decided. The overwhelming majority of the stockholders of Paramount here acquiesce in and apparently affirm what the directors have done. They have not undertaken to instruct the directors to do otherwise.''

In Goodwin v. Castleton, 19 Wash. (2d) 748, 144 Pac. (2d) 725, 731-733, 150 A. L. R. 859; the court said:

''Ordinarily, an action at law or a suit in equity, to enforce corporate rights or to redress wrongs done to a corporation, cannot be maintained by a stockholder or a group of stockholders. The reason for this is that the cause of action accrues to the corporation itself, and the stockholders' rights therein are merely of a derivative character and therefore can be enforced or asserted only through the corporation. 13 Am. Jur. 504, Corporations, sec. 461; 18 C. J. S., Corporations, sec. 559, page 1272.

''However, where it is shown that the stockholder has exhausted all his available means to obtain within the corporation itself redress of his grievances or the institution of an action in conformity to his wishes, and it appears that the corporation is incapable of enforcing a right of action accruing to it or that its officers or directors are acting fraudulently or collusively among themselves or with others in such manner as will result in serious injury to the corporation or to the interests of its stockholders, then, in order to prevent a failure of justice, equity will permit a suit to be brought by a stockholder or stockholders to enforce a right of action belonging to the corporation. * * *

'' 'The stockholder does not bring such a suit because *his* rights have been *directly* violated, or because the cause of action is *his*, or because *he* is entitled to the relief sought; he is permitted to sue in this manner *simply in order to set in motion the judicial machinery of the court.*' Accord, Elliott v. Puget Sound Wood Products Co., 52 Wash. 637, 101 Pac. 228; Tribble v. Missionary Sisters of Sacred Heart, 137 Wash. 326, 242 Pac. 372.

''It does not follow from what has been said in this connection, however, that a stockholder or a minority group of stockholders

may impose their unbridled wills upon the officers or directors of a corporation by launching the corporation into litigation for the purpose of obtaining for it certain benefits which the complaining parties deem to belong or be due to the corporation. Business policy may dictate that, under certain circumstances, it would be unwise or unprofitable to insist upon one's rights, and accordingly the directors of a corporation or the majority of its stockholders may decline to bring or maintain a suit which a single stockholder or a minority group believes should be instituted.

" 'The mere fact that a corporation has a cause of action for an injury does not always make it incumbent upon it to sue, any more than in the case of an individual. If, in the opinion of the directors or a majority of the stockholders, the best interests of the company do not require it to sue, it need not do so. The matter ordinarily is within their discretion, and if they act in good faith, their refusal to sue violates no right of dissenting stockholders, so as to entitle them to maintain a suit in their own behalf. The exercise of such discretion by the directors will not be lightly set aside by the court, and where a stockholder complains of such action of the directors the court will consider the circumstances, and, if no bad faith is shown, will decline to substitute the judgment of the stockholder for that of the managing directors, 13 Fletcher, Cyclopedia Corporations (Perm. Ed., 1943 Rev. Vol.), 147, sec. 5822.

"This court has itself enunciated that principle in Opportunity Christian Church v. Washington Water Power Co., 136 Wash. 116, 238 Pac. 641; as has the United States Supreme Court in Corbus v. Alaska Treadwell Gold Mining Co., 187 U. S. 455, 23 S. Ct. 157, 47 L. Ed. 256. * * *

"We emphasize the point, as expressed above, that the particular privilege which, under certain circumstances, is accorded to a single stockholder or to a minority group of stockholders, is simply that of setting in motion the judicial machinery, and its sole purpose is to prevent what would otherwise amount to a failure of justice.

"The mere circumstances that a lone stockholder, or a group of such individuals, has initiated a derivative action, and has alleged the existence of facts entitling him or them to maintain the suit in place of the corporation, do not of themselves establish the propriety of the action or the necessity for its continued maintenance, for otherwise, by this device the corporation, its officers, and directors, and the majority stockholders would at once be conclusively shorn of their powers of management and discretion in the conduct of those affairs which are of vital concern to the corporation and all its stockholders. The lone stockholder or the stockholders bringing such action not only have the burden of proving the material charges entitling the corporation itself to recover, but they must also establish the grounds entitling them to sue in place of the corporation.

"Since those who conduct the affairs of the corporation or who have the ultimate power of control over it have the right, in the first instance, to determine whether a suit shall be brought by the corporation or whether an existing controversy shall be compromised without suit, so they also have the right to inquire, consider, and determine whether a suit already brought by a dissentient stockholder is well-founded, what its chances for success may be, and whether in any event its continued maintenance may injuriously affect the present or future prosperity of the corporation. Their right in such matters is not completely forestalled by the mere fact that a single stockholder or a group of stockholders has taken the initiative by instituting a derivative action."

Three years have elapsed since plaintiff, but one of 75 or more other persons holding stock in the corporation, commenced this suit inviting all other stockholders "similarly interested, who may elect to come in and contribute to the expense of this action" to join with him in his action seeking the aid of a court of equity to determine whether he or the board of directors is right and whether the landlord Wiggins has sufficient right or interest in the south 51 feet of the two town lots in Sheridan, used and occupied by the tenant corporation in conducting its business,

to entitle such landlord to collect $70 per month or any other sum as rental therefor. No other stockholder has elected to "come in." No other stockholder has elected to "contribute to the expense" of the litigation. After three years in court, plaintiff still stands alone in his repeated attempts to override the business judgment and decision of the board of directors not to litigate the title to these fractional portions of the lots. Seventy dollars per month pro-rated among 75 shareholders would figure an expense to plaintiff of less than ninety-four cents per month, —less than $34 for the three years this suit has been pending. By declining to take any part in this trifling controversy have plaintiff's 74 or more stockholding neighbors apparently placed their stamp of approval on the "hands off" policy determined upon by the officers of the corporation and acquiesced in, ratified and affirmed what their board of directors has done.

Suits to quiet title often precipitate long, hard-fought legal battles fraught with uncertainties, hazards and much expense. This was the experience of Farmers Co-operative Oil & Supply Company of Conrad resulting in at least four separate suits in the district court of Pondera county, Montana (Cases Nos. 5450, 5533, 5607 and 5637 therein) and at least two appeals to this court (Cases Nos. 8448 and 8743 herein). Pritchard Petroleum Co. v. Farmers Cooperative Oil & Supply Co. et al., 117 Mont. 467, 161 Pac. (2d) 526, and Id., Mont., 190 Pac. (2d) 55.

No decision has been cited nor has our exhaustive research of the authorities from the year 1843 to the present revealed any case where a court of equity has permitted a lone dissatisfied holder of but a single share of voting stock in a corporation to maintain a suit in his own name to quiet title to real property of which he affirmatively pleads the corporation "is the sole and exclusive owner in fee simple title." That such lone stockholder is without right to maintain such an action is fundamental and hornbook law. Applying the elemental principles above stated to the case at bar it is clear that the trial court's rulings and judgment were correct.

The judgment of dismissal is affirmed.

ASSOCIATE JUSTICES FREEBOURN and BOTTOMLY concur.

MR. JUSTICE ANGSTMAN (dissenting):

I of course agree with many of the fundamental principles of hornbook law contained in the majority opinion.

I agree that courts will not interfere with the internal management of a corporation at the instance of minority stockholders when such management involves discretionary matters within the scope of the powers of the corporation. I will go further and say that courts will not interfere in such matters even at the instance of a majority of the stockholders.

But we are not here concerned with the internal management of a corporation by its directors acting within their discretionary powers. Here it is alleged that the corporation is the sole and exclusive owner of the property and that it is the only land owned by the corporation and that Wiggins "claims some right, title, interest or estate in, or lien or encumbrance upon the real property" involved but that "every such alleged claim is without foundation and void."

Notwithstanding his lack of any interest in the property it is alleged that he has been demanding and the corporation has been paying him $70 per month as alleged rental and this demand has since the commencement of this action been increased to $100 per month.

The property of a business corporation is held in trust by the corporation for its members, and "it is clearly beyond the power of such business corporation, at least as against their creditors and members, to make a donation or gift of their property for a purpose in no way tending to further their business." 13 Am. Jur., "Corporations," sec. 806, p. 820; and see McConnell v. Combination Min. & Mill. Co., 30 Mont. 239, 76 Pac. 194, 104 Am. St. Rep. 703.

It seems clear to me that if the allegations of the complaint

are true, and for the purposes of the demurrer, they must be taken as true, the acts complained of are *ultra vires* and amount to a fraud upon the stockholders.

On that vital point I disagree with the majority opinion. I also think the majority opinion is grounded upon the palpably erroneous notion that we are here concerned only with what is therein denominated the internal management of a corporation. Cases are legion that when that internal management amounts to the practice of fraud upon the stockholders or is *ultra vires* or illegal, courts of equity will intercede on behalf of and to protect minority stockholders.

I concede that ordinarily where a cause of action at law exists in favor of a corporation, suit must be brought by the corporation itself and in its corporate name and may not be brought by a stockholder.

"In equity, however, the rule is not inflexible, as it is at law. In a proper case, a court of equity will look beyond the corporate body as a legal entity distinct from its members, and, disregarding the fiction, will recognize the fact that a corporation is in reality an association of individuals for the purpose of private gain, like an ordinary partnership, and that, while they have not the legal title to the assets of the corporation, they are nevertheless the beneficial or equitable owners. And if an injury is committed or threatened against the corporation which will constitute a violation of the equitable rights of stockholders, and for any reason a dissenting stockholder cannot obtain redress or relief through the corporation, a court of equity will grant appropriate relief in a suit brought by him in his own behalf, or in behalf of himself and other stockholders who may come in and be made parties, according to the circumstances. Such a suit is generally brought and sustained because the corporation is under the control of the persons who have committed, or threatened to commit, the wrongs complained of.

"A suit may be maintained in equity although the corporation might have maintained an action at law on the same cause.

Equity has power to redress such wrongs independently of any statute.'' Fletcher Cyc., Corporations, Vol. 13, sec. 5945, p. 302, et seq.

The United States Supreme Court, in speaking of this question in the early case of Dodge v. Woolsey, 18 How. 331, 15 L. Ed. 401, had this to say: ''It is now no longer doubted, either in England or the United States, that courts of equity in both, have a jurisdiction over corporations, at the instance of one or more of their members; to apply preventive remedies by injunction, to restrain those who administer them from doing acts which would amount to a violation of charters, or to prevent any misapplication of their capitals or profits, which might result in lessening the dividends of stockholders, or the value of their shares, as either may be protected by the franchises of a corporation, if the acts intended to be done create what is in the law denominated a breach of trust.''

In Hawes v. Oakland, 104 U. S. 450, 26 L. Ed. 827, the court enumerated the grounds on which a stockholder has an equitable remedy as follows: ''We understand that doctrine to be that, to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit:

''Some action or threatened action of the managing Board of Directors or Trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization;

''Or such a fraudulent transaction, completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders;

''Or where the Board of Directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

"Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.''

The precise point before us is, has plaintiff as a stockholder performed all the conditions precedent to his right to maintain the action.

Courts are generally agreed that one of the conditions precedent to a stockholder's right to maintain an action for the benefit of the corporation is that he first make demand upon the directors to act and their refusal to do so. That condition has been met here.

As to whether a minority stockholder must seek relief through the body of stockholders before he may maintain an action in behalf of the corporation is a question on which the courts are not in agreement. Some courts have held that he must apply to the stockholders as a condition precedent to his right to bring the action and others take the contrary view. Some of the cases which require him to resort to the stockholders are cases in which the relief sought by the minority stockholder was such that he might have been able to obtain by and through the stockholders without the necessity of anyone going to court. Those cases would have no application here because the question here sought is that of having the title to real estate quieted in the corporation. The stockholders were powerless to grant such relief themselves. The only question so far as this case is concerned is whether plaintiff or the corporate officers must bring the suit to quiet title.

This court in the following cases has either expressly held that a minority stockholder may proceed with an action after he has applied to the directors and met with their refusal or after he has shown that application to the directors would be futile and no suggestion was made that resort must also be made to the stockholders. Gerry v. The Bismarck Bank, 19 Mont. 191, 47 Pac. 810; Forrester v. Boston & Montana Consolidated Cop-

548

per & Silver Min. Co., 21 Mont. 544, 55 Pac. 229, 353; McConnell v. Combination Min. & Mill. Co., supra; Brandt v. McIntosh, 47 Mont. 70, 130 Pac. 413; Kleinschmidt v. American Mining Co., Ltd., 49 Mont. 7, 139 Pac. 785; Deschamps v. Loiselle, 50 Mont. 565, 148 Pac. 335.

The uncertainty of procedure has arisen by reason of language used in what the courts treat as the bellwether case of Hawes v. Oakland, supra. In that case after enumerating grounds for which equity would entertain a suit by a minority stockholder, the court said: ''But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.''

That language, like every court opinion, should be considered in the light of the facts before the court. In that case all that the plaintiff sought was to prevent the corporation in which he was a minority stockholder from furnishing water to the city of Oakland free of charge. That was a matter that could have been stopped by the stockholders. Here the stockholders could not quiet title to the land in question. Likewise in the Oakland case the court pointed out that: ''There is no allegation of fraud or of acts *ultra vires,* or of destruction of property, or of irremediable injury of any kind.''

The court also pointed out that the question involved in that

case was one of discretion and that a minority stockholder could not interfere with the discretion of the board of trustees. The court on that point said: "It may be the exercise of the highest wisdom, to let the City use the water in the manner complained of. The directors are better able to act understandingly on this subject than a stockholder residing in New York. The great body of the stockholders residing in Oakland or other places in California, may take this view of it and be content to abide by the action of their directors.

"If this be so, is a bitter litigation with the City to be conducted by one stockholder for the Corporation and all other stockholders, because the amount of his dividends is diminished?

"This question answers itself, and without considering the other point raised by the demurrer, we are of opinion that it was properly sustained, and the bill dismissed, because the appellant, by that bill, shows no standing in a court of equity—no right in himself to prosecute this suit." It is apparent that the court would have reached the same result had unsuccessful application been made by the minority stockholder to the body of stockholders before instituting action.

That the case has no application to the facts here involved is readily apparent. Here we must assume on demurrer that the facts alleged are true. There is not involved here any matter of discretion. If the facts alleged are true, the corporation is paying rental for the use of property which it already owns. Such acts are clearly *ultra vires*. Furthermore the relief sought here, that of quieting title to the land, is one that the stockholders could not grant without resort to a court of equity. Whether plaintiff resorts thereto directly, or induces action by the stockholders, affects no substantial right of defendant Wiggins.

On the authority of the Oakland case this court in Allen v. Montana Refining Co., 71 Mont. 105, 227 Pac. 582, 587, made a statement upon which the trial court based its conclusion. In that case this court said: "It appears from the allegations of the complaint that plaintiffs own some of the common stock of the Montana Refining Company, and that if they, in connection with

other holders of common stock friendly to them, own or control a majority of that stock, and if it be a fact that the directors were acting contrary to the best interests of the corporation, manifestly their duty was to oust the recalcitrant directors and elect members who will promote and protect the company's interests. In any event, in the absence of a showing that a majority of the voting stock was held by persons who refused their aid to obtain redress for the alleged wrong of which complaint is now made, and in the absence of any showing that the case will not admit of delay necessary to obtain action by the stockholders, it was incumbent upon plaintiffs that they appeal to the stockholders and that they be denied relief before they could institute this action; in other words, a court will not do for minority stockholders what they may do for themselves.''

If the stockholders had it in their power to grant the relief asked for by plaintiff, then the statement was justified.

So far, however, as the Allen case suggests that recalcitrant directors should be ousted, the court seems to have given little consideration to the question. The opinion implies that a majority of the stockholders may oust recalcitrant directors, whereas under the statute it requires a vote of two-thirds of the stockholders. R. C. M. 1947, sec. 15-408. When the president and the board of directors refuse to act, it requires stockholders holding at least one-half of the votes in order to even call a stockholders' meeting for the purpose of removing a director. Id. The Allen case quotes with apparent approval from the case of Continental Securities Co. v. Belmont, 206 N. Y. 7, 99 N. E. 138, 51 L. R. A., N. S., 112, Ann. Cas. 1914A, 777, but the court in the Belmont case used further language not quoted in the Allen case, which applies to the facts here as follows: ''If the body of stockholders has no adequate power or authority to remedy the wrong asserted by the individual stockholders, it is unreasonable and unnecessary to require an application to it to redress the wrong before bringing a representative action'' [206 N. Y. 7, 99 N. E. 142].

This court again made reference to the rule of the Allen case in State Bank of Outlook v. Sheridan County, 72 Mont. 1, 230 Pac. 1097, and in Cobb v. Lee, 80 Mont. 328, 260 Pac. 722.

The latest case by this court on this subject is that of Sullivan v. Mountain, 117 Mont. 224, 160 Pac. (2d) 477, 479, wherein this court held that sufficient foundation was laid for action by a minority stockholder when unsuccessful application had been made to the board of directors. This court in that case said: "From the complaint it is made to appear, and the court found, that the Shelby bank had a valid claim against the defendant for failure to pay to the bank the money received as a commission from Haeh. The facts constituting this claim had been brought to the attention of the several Boards of Directors of the bank by the plaintiff, and it had then become the duty of the Board of Directors to take the necessary steps to obtain redress. Since in the instant case the last sitting Board of Directors took no action, and gave no reason for refusing to do so, we believe the trial court was fully justified in finding that the showing made was sufficient to lay a foundation for the bringing of this action by Doctor Sullivan, as a stockholder." There was no suggestion in that case that resort must be had to the stockholders or a showing made that it would have been futile so to do. Lawyers and litigants have the right to rely upon the reasons given in the opinion as the law applicable and to me it seems a novel doctrine that this court can now say that there were other reasons not mentioned in the opinion which would have compelled the same result, but which "merely lurk in the record." Valier Co. v. State, 123 Mont. 329, 215 Pac. (2d) 966.

The majority opinion in this case undertakes to justify the Sullivan case upon the ground that it appears from the allegations of the complaint in that case that resort to the stockholders would have been useless. I think it is too late to rewrite the opinion in the Sullivan case. But if we were permitted to do so we would have to go further than has been attempted by the majority in this case. The allegations made in the Sullivan case to the effect that R. D. Mountain dominated three of the

other directors were flatly denied in the answers filed in that case. Appellant in his brief in this court questioned the sufficiency of the evidence to show plaintiff's right to maintain the action. Were we permitted to rewrite that opinion we would be obliged to consider the evidence and not merely the allegations of the complaint and the findings of the lower court thereon.

Furthermore if we give the same liberal interpretation to the allegations of the complaint in this case that is now attempted to be applied in the Sullivan case we would be obliged to sustain the complaint before us. The complaint is the second amended complaint. The record shows that the action has been pending since March 1947. The complaint invited all stockholders, of which there were alleged to be 75 or more, to join in the action. So far as we are advised not a single stockholder has joined plaintiff in the action. To me it seems unlikely that plaintiff would be able to accomplish anything in applying to them for redress and that sufficient appears from the record to so show.

In legal effect the opinion in the Sullivan case overrules the holding in the Allen case and others of like import to the effect that a minority stockholder must first attempt to oust the directors before he may bring an equitable action for the benefit of the corporation and thus protect his equity in the corporation. While the opinion in the Sullivan case makes no reference thereto, the fact is it reached the same conclusion as did Mr. Schmidt in his excellent treatment of this subject in the Montana Law Review, 1942, p. 105.

Reference should be made to the rule in the federal courts. Because of abuses in resorting to the federal courts on the ground of diversity of citizenship and the added work placed upon those courts, there was adopted a rule that in a stockholders' action the complaint must set forth the efforts used to secure the desired action from the directors and the stockholders. This rule does not, however, apply to state courts. Forrester v. Boston & Montana etc. Min. Co., supra.

And even in the federal courts it is not always necessary to

resort to the stockholders. Berg v. Cincinnati, New Port, etc. R. Co., D. C., 56 F. Supp. 842.

And the federal courts are lenient in dispensing with the rule or in discovering facts under which it can be held the rule does not apply. Delaware & Hudson Co. v. Albany etc. R. Co., 213 U. S. 435, 29 S. Ct. 540, 53 L. Ed. 862.

The rule which I think applies here is stated in 3 Cook on Corporations, 7th Ed., sec. 740, p. 2700, as follows: "* * * The fact, however, that the stockholders in meeting assembled cannot control the discretion of the directors in bringing such a suit; that the remedy of refusing to re-elect them involves delay, and involves the assumption that a minority of the stockholders can by the election control such a suit; that irreparable injury or the vesting of great financial interests may occur in the meantime; and that laches may arise as a bar to the stockholder's suit—has settled the rule that the stockholder's request to the corporate directors to institute the suit is sufficient. He need not also apply to a stockholders' meeting * * *."

Mr. Fletcher on Corporations, Vol. 13, sec. 5964, p. 327, after referring to the Hawes case, supra, said: "There is considerable authority, however, denying the necessity for a demand upon the stockholders as a body, at least where they retain no control of the corporate business except by means of an annual election of officers. One line of cases makes a distinction between causes of action which can be ratified by the corporation as a body and those which cannot be so ratified, holding that an appeal to the stockholders is not necessary where the breach of duty by the stockholders cannot be ratified by the stockholders as a body, but that if the subject matter of the stockholders' complaint is for any reason within the immediate control, direction, or power of confirmation of the body of stockholders, it must be brought to the attention of such stockholders, for action, before suit is brought, unless such application would clearly be useless."

The statement made in the note in 72 A. L. R. 628, quoted in the majority opinion to the effect that the cases are uniform

in holding that a stockholder may not bring an action in court in the interest of the corporation until he has first made a request that the stockholders sue the directors, or that an action be brought for their benefit, is too broad and not justified by the facts.

No useful purpose would be subserved here in examining all the cases cited in support of that statement. A cursory examination of a representative group of those cases will disclose that at least some of them do not in any respect support that text. In the case of Difani v. Riverside County Oil Co., 201 Cal. 210, 256 Pac. 210, 213, which is the first one cited from the state of California, the only question decided was that the stockholder had no standing in court because he had not ''exhausted all the means within his reach to obtain redress from the managing body of the corporation.'' There was no suggestion in the opinion of the court that the stockholder must also apply to the body of stockholders.

In Fleming v. Black Warrior Copper Co., 15 Ariz. 1, 136 Pac. 273, 51 A. L. R., N. S., 99, it was held that demand on the management of the corporation need not be made by a minority stockholder before he may sue where the managers had complete control of the affairs of the corporation. There was no suggestion of any necessity to appeal to the body of stockholders.

I have not examined all the cases there cited but most of those which I have examined are cases involving merely the internal management of the corporation as to matters resting in the discretion of the board of directors. They do not involve ultra vires acts and acts which work a fraud upon stockholders such as those alleged here.

Others have to do with desired relief unlike that here which it was within the power of the stockholders to grant.

The case of Goodwin v. Castleton, 19 Wash. (2d) 748, 144 Pac. (2d) 725, 150 A. L. R. 859, so strongly relied upon in the majority opinion was one wherein the stockholder was seeking to interfere with the internal management of a corporation in

effecting a settlement agreement which was clearly a discretionary matter for the board of directors.

It is my conclusion that the court erred in sustaining the demurrer to the second amended complaint.

I think the judgment should be reversed and the cause remanded with directions to overrule the demurrer and to allow the demurring defendants a reasonable time in which to file and serve an answer.

MR. JUSTICE METCALF: I concur in the dissenting opinion of Mr. Justice Angstman.